Corrigan, J.
In this case, we consider whether the no-fault act, MCL 500.3101 et seq., requires defendant, a no-fault insurer, to reimburse plaintiff for her incapacitated husband’s food expenses. Because the food in this case is neither “for accidental bodily injury” under MCL 500.3105(1) nor “for an injured person’s care, recovery, or rehabilitation” under MCL 500.3107(l)(a), we hold that the expenses for it may not be recovered under those provisions of the no-fault act. We thus reverse the judgment of the Court of Appeals.
I. UNDERLYING FACTS AND PROCEDURAL HISTORY
On April 28, 1994, plaintiffs sixty-three-year-old husband, Douglas Griffith,[1] suffered a severe brain injury as a result of a motor vehicle accident. He received treatment at in-patient facilities and hospitals until August 1995, at which time he was transferred to a residence where he received twenty-four-hour nursing and attendant care. On August 6, 1997, Griffith returned home with plaintiff. He remains confined to a wheelchair and continues to require assistance with basic daily tasks such as eating and bathing.
*525 After the accident, defendant provided coverage as Griffith’s no-fault insurer. Until the time that Griffith returned home, the expenses that defendant covered included food expenses. After Griffith returned home, defendant denied plaintiffs claim for Griffith’s food expenses, and plaintiff sued to recoup those expenses.[2] The trial court ruled that Griffith’s food costs are an “allowable expense” under MCL 500.3107(l)(a) of the no-fault act and ordered defendant to pay a per diem food charge.
The Court of Appeals affirmed.[3] The Court relied on Reed v Citizens Ins Co of America, 198 Mich App 443; 499 NW2d 22 (1993), which held that a person receiving at-home care is entitled to room and board costs under MCL 500.3107(l)(a) to the same extent that such costs would constitute an allowable expense if the injured person received the same care in an institutional setting. Thus, the panel concluded that, under Reed, Griffith’s food costs are an “allowable expense” under MCL 500.3107(l)(a).
Defendant filed an application for leave to appeal to this Court, which this Court denied.[4] Thereafter, this Court granted defendant’s motion for reconsideration and granted leave to appeal.[5]
n. STANDARD OF REVIEW
This case requires us to determine whether an injured person’s food costs constitute an “allowable expense” under MCL 500.3107(l)(a). Issues of statutory *526 interpretation are questions of law that this Court reviews de novo. Jenkins v Patel, 471 Mich 158, 162; 684 NW2d 346 (2004).
III. PRINCIPLES OF STATUTORY INTERPRETATION
When interpreting a statute, we must ascertain the legislative intent that may reasonably be inferred from the statutory language itself. Sotelo v Grant Twp, 470 Mich 95, 100; 680 NW2d 381 (2004). When the language of a statute is unambiguous, the Legislature’s intent is clear and judicial construction is neither necessary nor permitted. Koontz v Ameritech Services, Inc, 466 Mich 304, 312; 645 NW2d 34 (2002). Because the role of the judiciary is to interpret rather than write the law, courts lack authority to venture beyond a statute’s unambiguous text. Id. Further, we accord undefined statutory terms their plain and ordinary meanings and may consult dictionary definitions in such situations. Hallaran v Bhan, 470 Mich 572, 578; 683 NW2d 129 (2004).
IV ANALYSIS
A. STATUTORY LANGUAGE AND LEGAL BACKGROUND
MCL 500.3105(1) provides:
Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter. [Emphasis added.]
According to the plain language of MCL 500.3105(1), a no-fault insurer is only required to pay benefits “for accidental bodily injury” arising out of an automobile accident. The no-fault act further restricts a no-fault insurer’s liability by defining the limited types of ben *527 efits that are payable “for accidental bodily injury... MCL 500.3107(l)(a), the statutory provision at the center of this case, states:
Except as provided in subsection (2), personal protection insurance benefits are payable for the following:
(a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person’s care, recovery, or rehabilitation. [Emphasis added.]
Thus, in addition to the requirement under MCL 500.3105(1) that benefits be “for accidental bodily injury,” MCL 500.3107(l)(a) circumscribes benefits to those expenses consisting only of items or services that are reasonably necessary “for an injured person’s care, recovery, or rehabilitation.”
Both this Court and the Court of Appeals have interpreted and applied the above statutes in cases involving claims for food or “room and board” expenses. In Manley v Detroit Automobile Inter-Ins Exchange, 127 Mich App 444, 448; 339 NW2d 205 (1983), rev’d 425 Mich 140 (1986), the plaintiffs’ minor son suffered severe head trauma in an automobile accident. He resided with the plaintiffs and received care from nurse’s aides. Id. at 449. The plaintiffs sued the defendant no-fault carrier, seeking, among other things, reimbursement for his room and board costs. Id. at 448-449. The defendant insurance carrier argued that because the plaintiffs already had a legal duty to care for their child, room and board costs were not compensable. Id. at 451. The Court of Appeals rejected this argument, largely on the basis of a worker’s compensation case that distinguished between “ordinary household tasks” such as cleaning and washing clothes and nonordinary tasks such as “ ‘[s]erving meals in bed and *528 bathing, dressing, and escorting a disabled person Id. at 452, quoting Kushay v Sexton Dairy Co, 394 Mich 69; 228 NW2d 205 (1975).
The panel concluded that the distinction between ordinary and nonordinary tasks could be reconciled with the language of MCL 500.3107(a), which then provided that “products, services, and accommodations not reasonably necessary for the injured person’s care, recovery, or rehabilitation are not ‘allowable expenses.’ ” 127 Mich App at 453. The Court reasoned:
The necessity for the performance of ordinary household tasks has nothing to do with the injured person’s care, recovery, or rehabilitation; such tasks must be performed whether or not anyone is injured.
This reasoning supports a generalization concerning the circumstances in which a product, service, or accommodation can fall within the definition of “allowable expense”. Products, services, or accommodations which are as necessary for an uninjured person as for an injured person are not “allowable expenses”. [Id. at 453-454 (emphasis added).]
The panel then opined that food “is as necessary for an uninjured person as for an injured person” and thus would not ordinarily constitute an “allowable expense” under MCL 500.3107 for an injured person cared for at home. 127 Mich App at 454.
When Manley was appealed to this Court, we effectively vacated the Court of Appeals room and board analysis. Manley v Detroit Automobile Inter-Ins Exchange, 425 Mich 140; 388 NW2d 216 (1986). We stated that the “question whether food, shelter, utilities, clothing, and other such maintenance expenses are an allowable expense when the injured person is cared for at home” had neither been raised before the trial court nor *529 argued in the Court of Appeals. Id. at 152. Accordingly, this Court declined to address the issue and stated that the Court of Appeals analysis of the issue “shall not be regarded as of precedential force or effect.” Id. at 153.
Justice BOYLE issued a concurring and dissenting opinion, asserting that the room and board issue was properly before this Court because the Court of Appeals had raised it sua sponte and discussed the issue in its opinion. Id. at 168 (BOYLE, J., concurring in part and dissenting in part). She could find “no principled basis” for distinguishing between food provided in an institutional setting and food provided at home, and concluded that the Court of Appeals “injured person vs. uninjured person” test was not only “unwieldy and unworkable” but that it effectively punished those who choose to care for injured family members at home. Id. at 168-169. Justice Boyle opined that MCL 500.3107 imposes three requirements for “allowable expenses”: “1) the charge must be reasonable, 2) the expense must be reasonably necessary, and 3) the expense must he incurred.” 425 Mich at 169.
Thereafter, in Reed, the Court of Appeals adopted Justice Boyle’s Manley analysis. The insured in Reed had been severely injured in an auto accident. Reed, supra at 445. The plaintiff, the insured’s mother, filed various claims against the defendant insurer and moved to amend her complaint to include a claim for room and board expenses. Id. at 445-446. The trial court denied the motion on the basis that such expenses were not recoverable under the no-fault act. Id. at 446.
The Court of Appeals reversed, reasoning as follows:
We see no compelling reason not to afford the same compensation under the act to family members who provide room and board. Subsection 1(a) does not distinguish between accommodations provided by family members and *530 accommodations provided by institutions, and we decline to read such a distinction into the act. Moreover, holding that accommodations provided by family members is [sic] an “allowable expense” is in accord with the policy of this state. Denying compensation for family-provided accommodations while allowing compensation in an institutional setting would discourage home care that is generally, we believe, less costly than institutional care. Irrespective of cost considerations, it can be stated without hesitation that home care is more personal than that given in a clinical setting....
We hold that, where an injured person is unable to care for himself and would be institutionalized were a family member not willing to provide home care, a no-fault insurer is liable to pay the cost of maintenance in the home. [Id. at 452-453 (citations omitted; emphasis added).]
In addition to the above reasoning, the Court of Appeals relied on the notion that because the no-fault act is remedial in nature, it “must be liberally construed in favor of persons intended to benefit thereby.” Id. at 451.
B. INTERPRETATION OF STATUTORY LANGUAGE AND APPLICATION '
As previously stated, MCL 500.3105(1) and MCL 500.3107(l)(a) impose two separate and distinct requirements for “care, recovery, or rehabilitation” expenses to be compensable under the no-fault act. First, such expenses must be “for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle ....” MCL 500.3105(1) (emphasis added). Second, these expenses must be “reasonably necessary ... for an injured person’s care, recovery, or rehabilitation.” MCL 500.3107(l)(a).
Defendant contends that MCL 500.3105(1) requires that allowable expenses be causally connected to a *531 person’s injury. We agree. In fact, MCL 500.3105(1) imposes two causation requirements for no-fault benefits.
First, an insurer is liable only if benefits are “for accidental bodily injury.. . .” “[F]or” implies a causal connection.[6] “ [Accidental bodily injury” therefore triggers an insurer’s liability and defines the scope of that liability. Accordingly, a no-fault insurer is liable to pay benefits only to the extent that the claimed benefits are causally connected to the accidental bodily injury arising out of an automobile accident.
Second, an insurer is liable to pay benefits for accidental bodily injury only if those injuries “aris[e] out of” or are caused by “the ownership, operation, maintenance or use of a motor vehicle . . . .” It is not any bodily injury that triggers an insurer’s liability under the no-fault act. Rather, it is only those injuries that are caused by the insured’s use of a motor vehicle.
In this case, it is uncontested that the insured’s injuries arose out of his use of an automobile. Therefore, to the extent that the insured’s injuries stem from an automobile accident, application of the second causal element noted above does not bar plaintiffs claim.
The first causal element, however, poses a problem for plaintiff. Plaintiff does not claim that her husband’s diet is different from that of an uninjured person, that his food expenses are part of his treatment plan, or that these costs are related in any way to his injuries. She claims instead that Griffith’s insurer is liable for ordi *532 nary, everyday food expenses. As such, plaintiff has not established that these expenses are “for accidental bodily injury ... .”[7]
Even if ordinary food expenses were compensable under § 3105, an insurer would be liable for those expenses only if they were also “allowable expenses” under MCL 500.3107(l)(a). This section provides that benefits are payable for “reasonably necessary products, services and accommodations for an injured person’s care, recovery, or rehabilitation.” In other words, an insurer is liable only for the cost of “products, services and accommodations” “reasonably necessary” “for an injured person’s care, recovery, or rehabilitation.”[8]
There is no dispute that Griffith is an “injured person.” Thus, the question is whether food is reasonably necessary for his “care, recovery, or rehabilitation” as an injured person. It is not contended here that the food expenses at issue are a part of the insured’s “recovery” or “rehabilitation.” Indeed, plaintiff does not allege that the food has special curative properties that might advance Griffith’s recovery or rehabilita *533 tion. The key issue, therefore, is whether the food expenses are necessary for Griffith’s “care.”
Because “care” can have several meanings depending on the context in which it is used, the doctrine of noscitur a sociis is helpful in discerning the meaning of that term in this statute. This doctrine is premised on the notion that “the meaning of statutory language, plain or not, depends on context.” King v St Vincent’s Hosp, 502 US 215, 221; 112 S Ct 570; 116 L Ed 2d 578 (1991).[9] Thus, under the doctrine of noscitur a sociis, “ ‘ “ a word or phrase is given meaning by its context or a setting.” ’ ” Koontz, supra at 318 (citations omitted). As a general matter, “words and clauses will not be divorced from those which precede and those which follow.” Sanchick v State Bd of Optometry, 342 Mich 555, 559; 70 NW2d 757 (1955). When construing a series of terms such as “care, recovery, or rehabilitation,” we are guided by the principle “that words grouped in a list should be given related meaning.” Third Nat’l Bank in Nashville v Impac Ltd, Inc, 432 US 312, 322; 97. S Ct 2307; 53 L Ed 2d 368 (1977).
Generally, “care” means “protection; charge,” and “to make provision.” Random House Webster’s College Dictionary (2001). Thus, taken in isolation, the word “care” can be broadly construed to encompass anything that is reasonably necessary to the provision of a person’s protection or charge. But we have consistently held that “[c]ourts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute sur *534 plusage or nugatory.” State Farm Fire & Cas Co v Old Republic Ins Co, 466 Mich 142, 146; 644 NW2d 715 (2002). Therefore, we must neither read “care” so broadly as to render nugatory “recovery and rehabilitation” nor construe “care” so narrowly that the term is mere surplusage.[10] “Care” must have a meaning that is related to, but distinct from, “recovery and rehabilitation.”[11]
As an initial matter, it is important to note that the statute does not require compensation for any item that is reasonably necessary to a person’s care in general. Instead, the statute specifically limits compensation to charges for products or services that are reasonably necessary “for an injured person’s care, recovery, or rehabilitation.” (Emphasis added.) This context suggests that “care” must be related to the insured’s injuries.
This conclusion is supported by the fact that the statute lists “care” together with “recovery” and “rehabilitation.” “Recovery” is defined as “restoration or return to any former and better condition, esp. to health from sickness, injury, addiction, etc.” Random House Webster’s College Dictionary (2001). “Rehabilitate” is defined as “to restore or bring to a condition of good health, ability to work, or productive activity.” Id. Both terms refer to restoring an injured person to the *535 condition he was in before sustaining his injuries. Consequently, expenses for “recovery” or “rehabilitation” are costs expended in order to bring an insured to a condition of health or ability sufficient to resume his preinjury life. Because “recovery” and “rehabilitation” are necessary only when an insured has been injured, both terms refer to products, services, and accommodations that are necessary because of injuries sustained through the use of a motor vehicle.
“Care” must have a meaning that is broader than “recovery” and “rehabilitation” but is not so broad as to render those terms nugatory. As noted above, both “recovery” and “rehabilitation” refer to an underlying injury; likewise, the statute as a whole applies only to an “injured person.” It follows that the Legislature intended to limit the scope of the term “care” to expenses for those products, services, or accommodations whose provision is necessitated by the injury sustained in the motor vehicle accident.[12] “Care” is broader than “recovery” and “rehabilitation” because it may encompass expenses for products, services, and accommodations that are necessary because of the accident but that may not restore a person to his preinjury state.
Griffith’s food costs here are not related to his “care, recovery, or rehabilitation.” There has been no evidence *536 introduced that he now requires different food than he did before sustaining his injuries as part of his treatment plan. While such expenses are no doubt necessary for his survival, they are not necessary for his recovery or rehabilitation from the injuries suffered in the accident, nor are they necessary for his care because of the injuries he sustained in the accident. Unlike prescription medications or nursing care, the food that Griffith consumes is simply an ordinary means of sustenance rather than a treatment for his “care, recovery, or rehabilitation.” In fact, if Griffith had never sustained, or were to fully recover from, his injuries, his dietary needs would be no different than they are now. We conclude, therefore, that his food costs are completely unrelated to his “care, recovery, or rehabilitation” and are not “allowable expenses” under MCL 500.3107(l)(a).[13]
*537 The parties focus on the distinction between food costs for hospital food and food costs for an insured receiving at-home care. Plaintiff contends that there is no distinction between such costs. We disagree.
Food costs in an institutional setting are “benefits for accidental bodily injury” and are “reasonably necessary products, services and accommodations for an injured person’s care, recovery, or rehabilitation.” That is, it is “reasonably necessary” for an insured to consume hospital food during in-patient treatment given the limited dining options available. Although an injured person would need to consume food regardless of his injuries, he would not need to eat that particular food or bear the cost associated with it. Thus, hospital food is analogous to a type of special diet or select diet necessary for an injured person’s recovery. Because an insured in an institutional setting is required to eat “hospital food,” such food costs are necessary for an insured’s “care, recovery, or rehabilitation” while in such a setting. *538 Once an injured person leaves the institutional setting, however, he may resume eating a normal diet just as he would have had he not suffered any injury and is no longer required to bear the costs of hospital food, which are part of the unqualified unit cost of hospital treatment.[14]
This reasoning can be taken a step further when considering the costs of items such as an injured person’s clothing, toiletries, and even housing costs. Under plaintiffs reasoning, because a hospital provided Grif *539 fith with clothing while he was institutionalized, defendant should continue to pay for Griffith’s clothing after he is released. The same can be said of Griffith’s toiletry necessities and housing costs. While Griffith was institutionalized, defendant paid his housing costs. Should defendant therefore be obligated to pay Griffith’s housing payment now that he has been released when Griffith’s housing needs have not been affected by his injuries?
Under plaintiffs reasoning, nothing would prevent no-fault insurers from being obligated to pay for any expenses that an injured person would otherwise be provided in an institutional setting as long as they are remotely related to the person’s general care. Plaintiffs interpretation of MCL 500.3107(l)(a) stretches the language of the act too far and, incidentally, would largely obliterate cost containment for this mandatory coverage. We have always been cognizant of this potential problem[15] when interpreting the no-fault act, and we are no less so today.
*540 Moreover, in seeking reimbursement for food and other such quotidian expenses, plaintiff is essentially seeking a wage-loss benefit. Reimbursement for the value of lost wages, however, is specifically addressed elsewhere in the no-fault act. See MCL 500.3107(l)(b).[16] See also Popma v Auto Club Ins Ass’n, 446 Mich 460, 463, 471; 521 NW2d 831 (1994). Plaintiffs construction of § 3107(l)(a) is strongly undermined by the Legislature’s express provision for, and limitation on, wage-loss benefits in § 3107(l)(b).
Under MCL 500.3105 and MCL 500.3107(l)(a), defendant is not required to reimburse plaintiff for the food expenses at issue in this case. Such expenses are not necessary “for accidental bodily injury” under MCL 500.3105. In addition, they are not “allowable expenses” under MCL 500.3107(1) (a) because food is not necessary for Griffith’s “care, recovery, or rehabilitation” under that subsection. Because the rule announced in Reed, supra, is contrary to the language of the above provisions, we overrule the Court of Appeals decision in Reed.
V CONCLUSION
We conclude that defendant is not required to reimburse plaintiff for Griffith’s food costs under MCL 500.3105 and MCL 500.3107(l)(a) of the no-fault act. Accordingly, we reverse the judgment of the Court of Appeals.
TAYLOR, C.J., and Young and MARKMAN, JJ., concurred with Corrigan, J.

 This opinion references Douglas Griffith as “Griffith” and Phyllis Griffith as “plaintiff.”

 Plaintiffs complaint included claims for items other than Griffith’s food, but those claims are not at issue in this appeal.

 Unpublished opinion per curiam of the Court of Appeals, issued August 16, 2002 (Docket No. 232517).

 468 Mich 946 (2003).

 469 Mich 1020 (2004).

 Random House Webster’s College Dictionary (1997) defines “for,” when used as a preposition, as “with the object or purpose of,” “intended to belong to or be used in connection with,” or “suiting the purposes or needs of.” The definition offered by Justice Kelly — “ ‘by reason of ”— also implies a causal connection. See post at 545. (Citation omitted.)

 Our dissenting colleagues fail to explain how they avoid the causation requirement in MCL 500.3105(1). As we will explain, because plaintiff is not on a special diet, his food expenses are not “for accidental bodily injury,” and those expenses therefore are not recoverable in this case. It is therefore not surprising that our dissenting colleagues avoid developing their analysis of MCL 500.3105(1), because their position is plainly inconsistent with the unambiguous language of that provision.

 In her concurring and dissenting opinion in Manley, Justice Boyle read MCL 500.3107(l)(a) as imposing only three requirements: “1) the charge must be reasonable, 2) the expense must be reasonably necessary, and 3) the expense must be incurred.” 425 Mich at 169 (Boyle, J, concurring in part and dissenting in part). In addition to these requirements, however, the statute states that an “allowable expense” must be “for” one of the following: (1) an injured person’s care, (2) his recovery, or (3) his rehabilitation.

 See Koontz, supra at 318, quoting Brown v Genesee Co Bd of Comm’rs (After Remand), 464 Mich 430, 437; 628 NW2d 471 (2001), quoting Tyler v Livonia Pub Schools, 459 Mich 382, 390-391; 590 NW2d 560 (1999) (“ ‘Contextual understanding of statutes is generally grounded in the doctrine of noscitur a sociis: “[i]t is known from its associates,” see Black’s Law Dictionary (6th ed), p 1060.’ ”).

 Our dissenting colleagues make the former error, construing “care” so broadly that “recovery and rehabilitation” are mere surplusage. If “care” means, as Justice Kelly contends, “ ‘the provision of what is necessary for the welfare and protection of someone,’ ’’post at 547, then “recovery and rehabilitation”- — both of which are certainly necessary for an injured person’s welfare — are stripped of any meaning.

 See Sutherland Statutory Construction (6th ed, 2000 rev), § 47.16, pp 265-267 (“[W]hen two or more words are grouped together, and ordinarily have a similar meaning, but are not equally comprehensive, the general word will be limited and qualified by the special word.”).

 For instance, the cost associated with setting a broken leg would be compensable under the term “recovery” because it is necessary to return a person to his post-injury health, and the cost of learning to walk on a prosthetic leg would be recoverable under the term “rehabilitation” because it is necessary to bring the person back to a condition of productive activity. Similarly, the cost of such items as a prosthetic leg or special shoes would be recoverable under the term “care,” even though the person will never recover or be rehabilitated from the injuries, because the cost associated with such products or accommodations stems from the injury.

 Our dissenting colleagues do not pay sufficient regard to the context in which the word “care” is used in MCL 500.3107(l)(a). They do not give effect to the Legislature’s choice to use the term “care” in conjunction with the terms “recovery” and “rehabilitation.” They also fail to give effect to the statute’s specific reference to “an injured person’s care, recovery, or rehabilitation.” As we have explained, this contextual background aids our effort to discern the meaning of the term “care” as used in the statute.
Our dissenting colleagues would instead read the word “care” in a vacuum, thereby allowing them to impose their preferred meaning without attempting to discern the context in which the Legislature used the term. Our dissenting colleagues’ failure to read the word “care” in context renders the word devoid of any definitional limit. Let there he no mistake — the implication of their interpretation is that any expense that is necessary for a person’s general “care” is recoverable, regardless of whether that expense hears any causal relationship to an “accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle ....” MCL 500.3105(1). Because they would allow a plaintiff to recover expenses for normal, everyday food consumed at home that does not differ from what an uninjured person would eat, would they also allow recovery of housing costs and expenses for clothing and toiletries, where those expenses do not hear any causal *537 relationship to an accidental bodily injury? Justice Kelly seems to concede that she would require no-fault insurers to pay for an injured person’s “shelter” where that expense bears no causal relation to the injuries. Post at 552.
It thus appears that Justice Kelly would essentially invent a new entitlement system by converting our no-fault law into a general welfare scheme. Her new scheme would pay all expenses of everyday life, such as mortgage payments and grocery bills, for anyone who has been injured in a motor vehicle accident, even where those expenses do not arise from injuries sustained in the accident. Justice Kelly does not explain how she would pay for her newly minted entitlement plan, but the effect of her position would be to force Michigan citizens to make these general welfare payments through increased mandatory insurance premiums. Perhaps Justice Kelly sincerely believes that our state’s citizens should bear this new financial burden, but such a policy choice belongs to the legislative branch of our government. In deciding the case before us, we must honor the intent of the Legislature as reflected in the current language of the no-fault act by applying the causation requirement embodied in the provisions at issue.

 Our dissenting colleagues opine that the language of the no-fault act does not distinguish between food expenses incurred in a hospital and food expenses at home. As we have explained, however, we believe this distinction arises from the language in MCL 500.3105(1) and MCL 500.3107(l)(a). Food expenses in an institutional setting are “benefits for accidental bodily injury,” and are “reasonably necessary products, services and accommodations for an injured person’s care, recovery, or rehabilitation,” given the limited dining options available in hospitals. After all, an injured person is required to eat hospital food precisely because his injuries require treatment in a hospital. By contrast, a person who eats a normal diet at home does not incur food expenses that meet the requirements of MCL 500.3105(1) and MCL 500.3107(l)(a).
Justice Kelly also asks whether the majority is implying that hospital food expenses would be reimbursable under MCL 500.3107(l)(a), but not under MCL 500.3105(1). We have stated clearly, however, that food costs in an institutional setting are “benefits for accidental bodily injury” and are “reasonably necessary products, services and accommodations for an injured person’s care, recovery, or rehabilitation.” See p 537 of this opinion. In other words, we have quoted the language from both statutory provisions in saying that such expenses are recoverable.
Finally, Justice Kelly expresses concerns about allowing recovery for food expenses in a hospital but not at home. It is the prerogative of the Legislature, however, to determine whether the no-fault act should be amended to allow recovery of food costs that are unrelated to an accidental bodily injury, taking into account policy concerns such as those expressed by Justice Kelly and competing considerations such as the increased costs of premiums for this mandatory form of insurance coverage. This Court lacks both the institutional capacity to weigh the competing policy considerations and the constitutional authority to amend the no-fault act.

 See, e.g., Shavers v Attorney General, 402 Mich 554, 607-611; 267 NW2d 72 (1978) (“In choosing to make no-fault insurance compulsory for all motorists, the Legislature has made the registration and operation of a motor vehicle inexorably dependent on whether no-fault insurance is available at fair and equitable rates.”); Cruz v State Farm Mut Automobile Ins Co, 466 Mich 588, 597; 648 NW2d 591 (2002) (recognizing that, because no-fault coverage is mandatory, the Legislature has continually sought to make it more affordable); Celina Mut Ins Co v Lake States Ins Co, 452 Mich 84, 89; 549 NW2d 834 (1996) (“the no-fault insurance system... is designed to provide victims with assured, adequate, and prompt reparations at the lowest cost to both the individuals and the no-fault system” [emphasis added]); O’Donnell v State Farm Mut Ins Co, 404 Mich 524, 547; 273 NW2d 829 (1979) (recognizing that the Legislature had provided for setoffs in the no-fault act: “Because the first-party insurance proposed by the act was to be compulsory, it was important that the premiums to be charged by the insurance companies be maintained as low as possible. Otherwise, the poor and the disadvantaged people of the state might not be able to obtain the necessary insurance.”).

 This section provides, in part:
Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured.