*In re* CARROLL

Docket No. 292649. Submitted April 12, 2011, at Detroit. Decided April 26, 2011, at 9:05 a.m. Leave to appeal sought.

Alan A. May petitioned the Macomb County Probate Court to order Auto Club Insurance Association to pay his fee for serving as the conservator of Auto Club's insured, Edward Carroll, who had been injured in a car accident. Auto Club opposed the petition, arguing that the $6816.70 fee, most of which had been charged for expenses associated with liquidating Carroll's property, was not related to Carroll's care, recovery, or rehabilitation and that Auto Club was therefore not required to pay it under MCL 500.3107(1)(a), a provision of the no-fault act (MCL 500.3101 *et seq.*). The court, Pamela G. O'Sullivan, J., ordered Auto Club to pay $99 of the fee, but determined that Carroll's estate was liable for the rest. May appealed.

The Court of Appeals *held*:

1. A person injured in an automobile accident is entitled to recover from his or her no-fault insurance carrier all reasonable charges incurred for reasonably necessary products, services, and accommodations for his or her care, recovery, or rehabilitation under MCL 500.3107(1)(a). The term "care" is not restricted to medical care; rather, it includes the type of care provided by a guardian who may be appointed for an incapacitated person pursuant to MCL 700.5306. The type of care that a guardian provides is not significantly distinguishable from the care that a conservator may be appointed to provide for a person who is unable to manage property and business affairs effectively because of a mental or physical illness or disability pursuant to MCL 700.5401(3)(a). Because Carroll could not manage his property or business affairs as a result of the injuries he incurred in an automobile accident, May's services as a conservator were reasonably necessary for Carroll's care, and Auto Club was obligated under MCL 500.3107(1)(a) to pay his entire fee.

2. A person injured in an automobile accident is entitled to recover from his or her no-fault insurance carrier expenses of not more than $20 a day that were reasonably incurred in obtaining ordinary and necessary services that he or she would

have performed during the first three years after the accident, not for income but for the benefit of himself or herself or of his or her dependent under MCL 500.3107(1)(c). Although a person would presumably have managed his or her own property and business affairs without compensation before the accident that caused the injury, if, as in this case, a person was so incapacitated by the injury that he or she could no longer manage his or her own affairs and could not offer direction to those who might act on his or her behalf, the services a conservator provides transcend the ordinary replacement services that are governed by MCL 500.3107(1)(c). They are instead extraordinary professional services related to the injured person's care. Accordingly, May's fee for services was not barred by the three-year limit in MCL 500.3107(1)(c).

3. May's fee was for services that were reasonably necessary for Carroll's care, and Carroll would not have required those services but for the accident. Therefore, the fee was an allowable expense under *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521 (2005).

Reversed.

1. INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE BENEFITS — COMPENSABLE EXPENSES — ALLOWABLE EXPENSES — CONSERVATOR'S FEES.

A person injured in an automobile accident is entitled to recover from his or her no-fault insurance carrier all reasonable charges incurred for reasonably necessary products, services, and accommodations for his or her care, recovery, or rehabilitation; the term "care" includes care that a conservator provides for a person who is unable to manage his or her property and business affairs effectively because of an injury caused by the accident; the conservator's fee is an allowable expense if it was for services that were reasonably necessary for the injured person's care and if the services would not have been required but for the accident (MCL 500.3107[1][a]).

2. INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE BENEFITS — REPLACEMENT SERVICES — CONSERVATOR'S SERVICES.

The services that a conservator provides to a person who was so incapacitated by an injury sustained in an automobile accident that he or she can no longer manage his or her own affairs and cannot offer direction to those who might act on his or her behalf may be compensable under MCL 500.3107(1)(a); these services are not replacement services under MCL 500.3107(1)(c).

*Kemp Klein Law Firm* (by *Lawrence G. Snyder*) for Alan A. May.

*Garan Lucow Miller, P.C.* (by *Daniel S. Saylor*), for Auto Club Insurance Association.

Before: BECKERING, P.J., and WHITBECK and M. J. KELLY, JJ.

M. J. KELLY, J. Petitioner, Alan A. May, acting as the conservator of the estate of Edward Carroll, appeals as of right the probate court's opinion and order apportioning the fee for his services between Carroll's estate and respondent, Auto Club Insurance Association. The order obliged Auto Club to pay $99 and Carroll's estate to pay the remaining $6,816.70 of May's fee. On appeal, May argues that the probate court erred to the extent that it determined that only $99 of the fee was for a reasonably necessary service for Carroll's care and recovery under MCL 500.3107(1)(a). Because Carroll would not have needed a conservator but for the injuries he sustained in an automobile accident, May maintains that Auto Club must pay the full amount of the conservator's fee as a reasonably necessary service for Carroll's care. We agree that Auto Club was obligated to pay the entire fee for May's services as a reasonably necessary expense for Carroll's care. For that reason, we reverse.

I. BASIC FACTS AND PROCEDURAL HISTORY

Carroll was involved in an automobile accident in 1982 that left him seriously debilitated. In the petition for appointment of a conservator, it is stated that he suffered a closed head injury, and the guardian ad litem's report indicates that Carroll was hospitalized for 2½ years following the accident. Auto Club was

Carroll's no-fault insurer. For approximately 26 years, Auto Club paid $7000 to $8500 a month to Carroll's wife for the 24-hour care she gave to Carroll. Carroll's wife died in November 2008. Just before Mrs. Carroll's death, the Carrolls' daughter committed her father to a psychiatric ward. Upon his release, the daughter placed him in an adult foster care home.

Carroll's daughter sought a formal guardianship, but he had concerns with her handling of his finances. A lawyer petitioned for the appointment of a conservator on Carroll's behalf and, in December 2008, the probate court appointed May to be the conservator of Carroll's estate.

On March 19, 2009, May petitioned for payment of his fee. He averred that Auto Club refused to pay his conservator fee of $6816.70. He attached an itemized billing to the petition and asked the court to approve the fee and order Auto Club to pay it. Auto Club opposed the petition, arguing that the fee was not for allowable expenses under MCL 500.3107(1)(a) of the no-fault act, MCL 500.3101 *et seq.*, because it did not relate to Carroll's care, recovery, or rehabilitation. In a subsequent reply, Auto Club indicated that Carroll had moved to an assisted living facility and that the conservator fee related to efforts to rent or sell Carroll's residence, liquidate his personal property, and sell his car.

In its June 2009 opinion and order, the probate court stated that the majority of May's claims involved "marshalling assets, paying bills, meetings, and administrative and legal services on Mr. Carroll's behalf." The court further noted that under MCL 500.3107(1)(a), personal protection benefits were payable for "allowable expenses," which were expenses related to a person's care, recovery, or rehabilitation. The court con-

cluded that, although the majority of the fee related to conservator duties, the services it reflected were for the most part not related to Carroll's care, recovery, or rehabilitation as required under MCL 500.3107(1)(a). The court determined that Auto Club was obligated to pay $99 dollars of the fee and that Carroll's estate was liable for the remainder.

This appeal followed.[1]

## II. PERSONAL PROTECTION INSURANCE BENEFITS

### A. STANDARD OF REVIEW

On appeal, we must determine whether the probate court erred when it concluded that the majority of May's fee for serving as Carroll's conservator did not constitute "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation" under MCL 500.3107(1)(a). We must also determine whether May's fee was, in the alternative, for replacement services under MCL 500.3107(1)(c), which would be barred because Carroll incurred the expenses more than three years after the date of his accident.[2] This

---

[1] This Court originally held this appeal in abeyance pending our Supreme Court's decision in *Wilcox v State Farm Mut Auto Ins Co*. See *In re Carroll*, unpublished order of the Court of Appeals, entered June 23, 2010 (Docket No. 292649). However, on November 9, 2010, the Supreme Court vacated its earlier order in *Wilcox* and denied leave to appeal. See *Wilcox v State Farm Mut Auto Ins Co*, 488 Mich 930 (2010).

[2] We note that Auto Club raised the argument that the conservator's fee was for replacement services under MCL 500.3107(1)(c) for the first time on appeal. Although this Court normally will not consider issues that were not properly preserved by raising them in the lower court, we "may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented[.]"

Court reviews de novo the proper interpretation of statutes such as MCL 500.3107. *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 525-526; 697 NW2d 895 (2005).

### B. EXPENSES FOR CARE, RECOVERY, OR REHABILITATION

A person injured in an automobile accident is entitled to a variety of personal protection insurance benefits—often referred to as PIP benefits—from his or her insurance carrier under MCL 500.3107. An injured person is entitled to "all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). In addition, the injured person is entitled to expenses, "not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services" that he or she "would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or herself or of his or her dependent." MCL 500.3107(1)(c). At issue here is whether May's services as a conservator were reasonably necessary for Carroll's "care, recovery, or rehabilitation" under MCL 500.3107(1)(a) or whether May's fee was for "ordinary and necessary services" that Carroll would have performed within the meaning of MCL 500.3107(1)(c).

Although this Court has not directly addressed whether a conservator's services are compensable as services reasonably necessary for an injured person's care, recovery, or rehabilitation, this Court has addressed whether services by a guardian were compensable under MCL 500.3107(1)(a). In *Heinz v*

*Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). Because the facts are sufficient to determine this question of law, we shall address this issue.

*Auto Club Ins Ass'n*, 214 Mich App 195, 196; 543 NW2d 4 (1995), the guardian and conservator of a person injured in an automobile accident sought to recover the fees and expenses associated with the guardianship under MCL 500.3107(1)(a). On appeal, the defendant insurer argued that MCL 500.3107(1)(a) applied only to medical care. *Id.* at 197. This Court determined that MCL 500.3107(1)(a) was not so limited:

> In short, [MCL 500.3107(1)(a)] provides for the payment of expenses incurred for the reasonably necessary services for an injured person's care. It is clear to us that if a person is so seriously injured in an automobile accident that it is necessary to appoint a guardian and conservator for that person, the services performed by the guardian and conservator are reasonably necessary to provide for the person's care. Therefore, they are allowable expenses under [MCL 500.3107]. [*Id.* at 198.]

Because the question in *Heinz* involved only the fees charged by the guardian, the court's references to conservators were arguably dicta. Nevertheless, the *Heinz* Court clearly concluded that the term "care," as used in MCL 500.3107(1)(a), was not restricted to medical care alone. Rather, it concluded that the type of care provided by a guardian could constitute "care" for purposes of MCL 500.3107(1)(a). And we conclude that there is little basis for distinguishing the care provided by a guardian from that provided by a conservator.[3]

---

[3] This Court has addressed the recovery of conservator expenses in two other cases, but those cases are distinguishable from the issue present here. In *In re Shields Estate*, 254 Mich App 367; 656 NW2d 853 (2002), this Court noted the holding of *Heinz*. However, the issue in *Shields* concerned whether the holding applied to fees of a conservator who was appointed because of a minor's status and not because of injuries incurred in an accident. *Id.* at 370-371. In *Freeman v Colonial Penn Ins Co*, 138 Mich App 444; 361 NW2d 356 (1984), the question was whether a conservator who managed the investments of his ward could collect work-loss benefits under MCL 500.3107(1)(b). The *Freeman* Court did

MCL 700.5306 governs the appointment of a guardian for an incapacitated person. To appoint a guardian, a court must find that a person is incapacitated and "that the appointment is necessary as a means of providing continuing *care* and supervision of the incapacitated individual . . . ." MCL 700.5306(1) (emphasis added). Moreover, the guardian must "make provision for the ward's care, comfort, and maintenance" and must "secure services to restore the ward to the best possible state of mental and physical well-being so that the ward can return to self-management at the earliest possible time." MCL 700.5314(b). If the guardian's ward does not have a conservator, the guardian may institute support proceedings and "[r]eceive money and tangible property . . . for the ward's support, care, and education." MCL 700.5314(d). If the ward has a conservator, the guardian must "pay to the conservator, for management as provided in this act, the amount of the ward's estate received by the guardian in excess of the amount the guardian expends for the ward's current support, care, and education" and must "account to the conservator for the amount expended." MCL 700.5314(f).

A probate court may appoint a conservator if the court determines that the "individual is unable to manage property and business affairs effectively," in relevant part because of "mental illness, mental deficiency, physical illness or disability," MCL 700.5401(3)(a), and that the individual has "property that will be wasted or dissipated unless proper management is provided, or money is needed for the individual's support, care, and welfare or for those entitled to

refer to " 'work loss benefits' for the replacement services of plaintiff," *id.* at 447, but it was not addressing compensation for replacement services under MCL 500.3107(1)(c).

the individual's support, and that protection is necessary to obtain or provide money," MCL 700.5401(3)(b). A probate court may also "appoint a conservator" for "an individual who is mentally competent, but due to age or physical infirmity is unable to manage his or her property and affairs effectively and who, recognizing this disability, requests a conservator's appointment." MCL 700.5401(4).

In the present case, May, as Carroll's nominee, petitioned the probate court for a conservatorship for Carroll. He represented that Carroll could not manage his property and business affairs because of physical illness or disability resulting from a closed head injury. Similar to a guardianship, the conservatorship was necessary as part of Carroll's care because he could no longer manage his own affairs as a result of a physical disability.

Auto Club makes two arguments against treating a conservatorship as "care" under *Heinz*. It argues that a conservatorship is really a replacement service under MCL 500.3107(1)(c) or that it no longer constitutes an "allowable expense" for a service for an injured person's care under MCL 500.3107(1)(a) after our Supreme Court's decision in *Griffith*. Neither of these arguments is availing.

### C. REPLACEMENT SERVICES

As already noted, *Heinz* stands for the proposition that the term "care," as used in MCL 500.3107(1)(a), is not limited to medical care. Under *Heinz*, the term "care" encompasses guardian services that, under MCL 700.5306(1), are for the purpose of providing "continuing care and supervision of the incapacitated individual . . . ." In contrast, conservator services are for an individual who is unable to "manage property and

business affairs." While a guardianship would qualify as a service for a person's care, a closer question is whether the service of managing property and business affairs is care.

This question is complicated by the definition of what have traditionally been recognized as replacement services: "*ordinary* and necessary services in lieu of those that . . . an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or herself or of his or her dependent." MCL 500.3107(1)(c) (emphasis added). Before the accident that caused the injury, the injured person would presumably have managed his or her own property and business affairs without compensation. Thus, the duties of a conservator could be construed to be a replacement service. However, this is not a situation involving ordinary living activities that can be performed by family, friends, or unskilled laborers. This is not a case in which Carroll might have been able to hire a family member or friend to write checks and pay his bills at his direction. Rather, Carroll is so incapacitated by his injuries that he cannot manage his own affairs and cannot offer direction to those who might act on his behalf; indeed, he had to have a lawyer petition a court to appoint and approve a conservator—complete with fiduciary responsibilities—to manage his affairs. Under these circumstances, the services provided transcend "ordinary" services akin to cooking, cleaning, or doing yard work and thus are not replacement services within the meaning of MCL 500.3107(1)(c). Instead, we conclude that the services are extraordinary professional services related to Carroll's care. See *In re Geror*, 286 Mich App 132, 135-136; 779 NW2d 316 (2009) (holding that services provided by a lawyer to a disabled person were compensable under MCL 500.3107(1)(a) because the services had been pro-

vided to ensure that the disabled person was receiving necessary care and—as such—were also related to the injured person's care.).

### D. ALLOWABLE EXPENSES AFTER *GRIFFITH*

After the decision in *Heinz*, our Supreme Court examined the type of expenses allowed under MCL 500.3107(1)(a) in *Griffith*. The *Griffith* Court addressed whether food expenses fall within the provisions of MCL 500.3107(1)(a) as expenses for an injured person's "care." *Griffith*, 472 Mich at 525. In that case, the insured was living at home but had been incapacitated as the result of an automobile accident. The Court held that whether an expense was allowable depended on whether it was causally connected to an accidental bodily injury arising out of an automobile accident under MCL 500.3105(1). *Id.* at 531. The Court determined that the plaintiff had failed to establish that the costs were for an accidental bodily injury given that his diet was not different from an uninjured person's diet, was not part of a treatment plan, and was not related to his injuries. *Id.* at 531-532. Further, the Court held that whether these ordinary food expenses were allowable expenses under MCL 500.3107(1)(a) depended on whether they were reasonably necessary for *an injured person's* care, recovery, or rehabilitation. The Court concluded that the care, recovery, or rehabilitation at issue had to be related to the injury. *Id.* at 534. The Court noted that recovery and rehabilitation were intended to restore a person to his or her preinjury state and were therefore necessary because of the injuries sustained. *Id.* at 534-535. As for care, the Court noted that some expenses might be necessary because of an accident but might not restore a person to his or her

preinjury state. The Court concluded that the food expenses at issue were not related to the injured person's care:

> Griffith's food costs here are not related to his "care, recovery, or rehabilitation." There has been no evidence introduced that he now requires different food than he did before sustaining his injuries as part of his treatment plan. While such expenses are no doubt necessary for his *survival*, they are not necessary for his recovery or rehabilitation from the injuries suffered in the accident, nor are they necessary for his care because of the injuries he sustained in the accident. Unlike prescription medications or nursing care, the food that Griffith consumes is simply an ordinary means of sustenance rather than a treatment for his "care, recovery, or rehabilitation." In fact, if Griffith had never sustained, or were to fully recover from, his injuries, his dietary needs would be no different than they are now. We conclude, therefore, that his food costs are completely unrelated to his "care, recovery, or rehabilitation" and are not "allowable expenses" under MCL 500.3107(1)(a). [*Id.* at 535-536.]

In this case, Carroll had a closed head injury that prevented him from being able to manage his own affairs—that is, Carroll's need for a conservator was causally related to the injuries Carroll sustained in an accident. Admittedly, even if Carroll had not been in the accident, he would have needed to pay his bills and manage his accounts and assets. The question therefore becomes whether the conservator's actions were needed for Carroll's care, recovery, or rehabilitation *from the injury*. Unlike the situation in *Griffith*, petitioner here was not seeking payment of the actual expenses that Carroll would have incurred—such as the cost of food— nor was he seeking to recover the cost of engaging a real estate agent to sell Carroll's home or the cost of advertisements. Those expenses would likely have been incurred regardless of the accident. Instead, the claim here is for

the *service* of having a conservator *manage* these matters; and this would not have been necessary but for the accident-related injury. The conservator's services here are more akin to attendant care provided by a nursing assistant who handles an injured person's intimate hygiene needs; in that situation, although the injured person would normally have handled those needs on his or her own, as a result of the injury he or she is no longer able to do so. Because expenses incurred to have someone perform those hygiene services are reasonably incurred for the injured person's care, recovery, or rehabilitation, the nursing assistant's services are compensable under MCL 500.3107(1)(a). See *Heinz*, 214 Mich App at 198; *Geror*, 286 Mich App at 135-136. Similarly, because the need for the conservator was causally connected to Carroll's injury and the expense is reasonably necessary for his care, it too is compensable under MCL 500.3107(1)(a). Accordingly, *Griffith* does not bar recovery of the conservator's fee.

The expenses for the service the conservator provided were not expenses for ordinary and necessary replacement services—they were expenses incurred for Carroll's care under MCL 500.3107(1)(a). For that reason, the probate court erred when it concluded that Auto Club was not liable to pay the full amount of the conservator's fee.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. As the prevailing party, petitioner may tax costs. MCR 7.219(A).

BECKERING, P.J., and WHITBECK, J., concurred with M. J. KELLY, J.