Cavanagh, J.
(dissenting). For nearly a decade now, a majority of this Court has employed what I believe to be an erroneous and confusing statutory interpretation of MCL 500.3107(1)(a). I have often dissented from this approach to Michigan’s no-fault act, MCL 500.3101 et seq. See, e.g., Griffith v State Farm Mut Auto Ins Co, 472 Mich 521, 542-554; 697 NW2d 895 (2005) (MARILYN KELLY, J., dissenting), Krohn v Home-Owners Ins Co, 490 Mich 145, 179-197; 802 NW2d 281 (2011) (HATHAWAY, J., dissenting), Johnson v Recca, 492 Mich 169, 207; 821 NW2d 520 (2012) (CAVANAGH, J., concurring in the result proposed by HATHAWAY, J., dissenting), and Douglas v Allstate Ins Co, 492 Mich 241, 279-295; 821 NW2d 472 (2012) (CAVANAGH, J., dissenting). Instead, I have argued in favor of Michigan’s previously well-established interpretation of MCL 500.3107(1)(a). See, e.g., Griffith, 472 Mich at 549 (MARILYN Kelly, J., dissenting) (citing Manley v Detroit Auto Inter-Ins Exch, 425 Mich 140, 168; 388 NW2d 216 (1986) (BOYLE, J., concurring in part), and Reed v Citizens *36 Ins Co of America, 198 Mich App 443; 499 NW2d 22 (1993), overruled by Griffith, 472 Mich 521). Because the majority’s opinion today is an extension of the Griffith majority’s erroneous interpretation, I respectfully dissent.
I. APPLYING THE GRIFFITH DISSENT
The key provisions of the no-fault act applicable to this case are MCL 500.3105(1)[1] and MCL 500.3107(1)(a).[2] I continue to believe that Justice MARILYN KELLY provided the proper interpretation of these statutes in her Griffith dissent. See Griffith, 472 Mich at 542-554 (MARILYN KELLY, J., dissenting). Specifically, MCL 500.3105(1) establishes that an insured is eligible for certain benefits as long as the insured is injured in a motor vehicle accident. Thus, the only limitations placed on the benefits are the limitations stated in MCL 500.3107(1)(a). Id. at 543-546. This is true because “the Legislature did not expressly limit the expenses recoverable in no-fault cases to those that the injured person did not require before the injury.” Id. at 548. Thus, it was the Griffith majority, not the Legislature, that created the additional restriction that personal injury *37 protection (PIP) benefits are not recoverable for expenses that were necessary before the injury. Id.
Applying the Griffith dissent’s interpretation of the relevant statutory provisions to this case, plaintiff clearly satisfied MCL 500.3105(1) given the catastrophic injuries plaintiff suffered in the motor vehicle accident. Next, it is necessary to determine whether the cost of the van is “reasonably necessary” for plaintiffs “care.” As Justice MARILYN KELLY explained, in order to ensure that the word “care” in MCL 500.3107(1)(a) has a meaning independent of the words “rehabilitation” and “recovery,” the word “care” should be defined as “the provision of what is necessary for the welfare and protection of someone.” Griffith, 472 Mich at 547 (citation and quotation marks omitted).[3] Although a van is not as obviously necessary for a person’s “welfare and protection” as the food at issue in Griffith, I think that the facts presented in this case adequately indicate that the van is reasonably necessary for plaintiffs care because a van is the only mode of personal transportation available that will accommodate plaintiffs severe injuries resulting from the motor vehicle accident.
The simplicity of applying the Griffith dissent’s interpretation of the plain language of MCL 500.3105 and MCL 500.3107(1)(a) is consistent with the long-held principle that the Legislature intended that the no-fault *38 act be construed liberally “in favor of the persons intended to benefit from it.” Turner v Auto Club Ins Ass’n, 448 Mich 22, 28; 528 NW2d 681 (1995). Likewise, the Griffith dissent’s approach addresses this Court’s oft-repeated concern regarding cost containment, because the dissent’s approach would eliminate much of the costly litigation spawned by the Griffith majority’s erroneous analysis, which will only be perpetuated by the majority opinion’s modifications to the Griffith majority’s analysis in this case.[4] Accordingly, I would affirm the judgment of the Court of Appeals because plaintiff is entitled to PIP benefits under MCL 500.3107(1)(a).
II. THE MAJORITY’S ERRONEOUS ANALYSIS
The straightforward application of the statutes’ plain language under the Griffith dissent stands in stark contrast to the majority’s effort to apply the Griffith majority’s confusing analysis to this case because, in attempting to clarify Griffith, the majority takes an approach that is divorced from the statutory language. Specifically, I agree with the majority that “nothing in the statutory language of MCL 500.3107(1)(a) supports the notion that postinjury allowable expenses should be reduced by the margin of the injured person’s preinjury expenses of the same character.” Ante at 27. However, the majority is forced to inject a variety of terms and phrases not found in the statutory language in an effort to “clarify” Griffith in its purported attempt to avoid an incremental approach to allowable expenses. The result *39 is an overly narrow construction of the statute that is inconsistent with the Legislature’s intent regarding MCL 500.3107(1)(a).
For example, the majority states that an “ordinary, everyday expense” cannot qualify as an allowable expense under MCL 500.3107(1)(a). However, the phrase “ordinary, everyday expense” is amorphous and, more importantly, absent from the statutory language. Rather, the statute simply provides that allowable expenses are “all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person’s care, recovery, or rehabilitation.” MCL 500.3107(1)(a) (emphasis added). In my view, “all reasonable charges” could encompass a so-called “ordinary, everyday expense” and thus satisfy MCL 500.3107(1)(a) if that expense is reasonable and reasonably necessary for the injured person’s welfare and protection.
The majority also proclaims that “the new expense must be of a wholly different essential character than expenses borne by the person before the accident. . . .” Ante at 27 (emphasis added). Again, this undefined statement of what an insured must now show to be eligible for benefits finds no support in the statutes or caselaw. Moreover, the majority’s explanation of expenses that satisfy MCL 500.3107(1)(a) will not add clarity to this area of the law because the majority’s examples are not truly “of a wholly different essential character.” For instance, the majority states that a “custom shoe” would qualify as an allowable expense. However, no matter how much a shoe is customized or modified, it retains its “essential character” as a shoe, i.e., it protects a person’s foot while walking. I question how the bench and bar are to apply the majority’s opinion consistently and fairly when the majority itself struggles to do so.
*40 Next, the majority attempts to draw a distinction between a “combined” product, which it deems insufficient to satisfy MCL 500.3107(1)(a), and an “integrated” product, which, according to the majority, does satisfy MCL 500.3107(1)(a).[5] Again, that distinction does not appear in the statutory language, and the majority is unable to cite any support for its judicially created distinction. Moreover, the majority’s explanation of the difference between a “combined” product and an “integrated” product evidences that the majority’s approach is entirely standardless.
Specifically, the majority defines a “combined” product as one that “can be separated easily, both conceptually and physically, so that the fact-finder can identify which costs are of a new character and are thus for the injured person’s care, recovery, or rehabilitation and which costs are ordinary, everyday expenses that are unchanged after the accident.” Ante at 28. Given the unique nature of modified products, however, this explanation provides little assistance to the bench and bar. Indeed, the majority concludes that “ [w]hen a medical products company produces a custom shoe, the shoe is an integrated product because the medical nature of the shoe . . . cannot be separated from the ordinary need for shoes by an uninjured person.” Ante at 30. Presumably, the majority considers a “custom shoe” integrated because it cannot be separated “conceptually or physically.” Yet, the majority reaches a different conclusion in this case despite the fact that, as explained later in this opinion, the same is true of plaintiffs modified, or “custom,” van. In short, al *41 though the majority claims to reject the “incremental” approach used in Ward v Titan Ins Co, 287 Mich App 552; 791 NW2d 488 (2010), and Hoover v Mich Mut Ins Co, 281 Mich App 617; 761 NW2d 801 (2008), the majority implicitly adopts that very rule by defining the preinjury need too broadly while simultaneously defining an “integrated product” too narrowly. The majority’s further deviation from the clear statutory language will only perpetuate the confusion that began with the Griffith majority’s erroneous analysis.[6]
III. APPLYING THE MAJORITY’S NEW RULE •
Although I would apply the Griffith dissent, I believe that plaintiff is entitled to benefits even under the majority’s faulty statutory interpretation. As the majority acknowledges, what might otherwise be considered an “ordinary, everyday expense” could constitute, under certain circumstances, an “integrated” product. Specifically, under the Griffith majority, food provided in an institutional setting is an “integrated” product, despite the fact that the exact same food is merely an “ordinary, everyday expense” when provided in a non-institutional setting. Likewise, although plaintiffs van is at its core “transportation,” it is nevertheless an “integrated” product because plaintiff is required to use “that particular” form of transportation, given that *42 plaintiff is ventilator dependent and wheelchair bound as a result of the motor vehicle accident. Griffith, 472 Mich at 537.
The majority apparently believes that plaintiff is not limited to a particular form of transportation, but that is simply not true, as even defendant conceded.[7] Thus, plaintiffs need for transportation cannot be easily separated from a van on conceptual grounds because no other type of vehicle can accommodate plaintiffs wheelchair. Stated differently, contrary to the majority’s unsupported conclusion that “the character of plaintiffs ordinary transportation needs remains unchanged,” ante at 34, because of his injuries the only personal vehicle that plaintiff can travel in is a van. Thus, plaintiff s postaccident transportation needs are significantly different from his preaccident transportation needs. In fact, it bears repeating that the van itself is for plaintiffs care because a van is the only type of vehicle that can accommodate plaintiffs postaccident condition. Before the accident, plaintiff did not require the modifications that the majority concedes are covered by MCL 500.3107(1)(a) because the modifications are for plaintiffs care. Likewise, before the accident, plaintiff did not require a van. After the accident, however, plaintiff cannot operate a personal vehicle unless it is modified and it is a van. Thus, there is no meaningful difference between the modifications and the van itself for purposes of the majority’s analysis. Plaintiff required neither before the accident, but, because of his motor-vehicle-related injuries, plaintiff now requires both for his care.[8]
*43 The majority implicitly acknowledges that plaintiffs condition limits him to transportation in a van when it states that “[i]f plaintiff had already owned a van, defendant could have modified that van. If plaintiff wanted a Mercedes van, he could pay for the added luxury . . .Ante at 34 (emphasis added). Fear that an insurer could be automatically required to pay for the full cost of any van an insured selects is misplaced because, as the plain language of MCL 500.3107(1) establishes, the cost of the van must be “reasonable,” and “the question whether expenses are reasonable . .. is generally one of fact for the jury . ...” Nasser v Auto Club Ins Ass’n, 435 Mich 33, 55; 457 NW2d 637 (1990). Thus, if an insured selects “a Mercedes van,” the insurer would be free to argue to the jury that the insured’s choice is not reasonable under MCL 500.3107(1)(a). Likewise, an insurer would be free to argue that any type of personal van is not reasonable because wheelchair-accessible public transportation is reasonable under the specific circumstances. See Wilcox, 488 Mich at 932 (CAVANAGH, J., dissenting). How *44 ever, as the majority admits, the parties in this case agreed that plaintiff should have a personal vehicle for transportation. Thus, because a van is the only mode of personal transportation available to plaintiff given the injuries he sustained in the motor vehicle accident, plaintiffs need for transportation cannot be easily separated from a van on conceptual grounds. Thus, the van itself is for plaintiffs care, and plaintiff is entitled to reimbursement for the full cost of the van even under the majority opinion because the modified van is an “integrated” product.
IV PLAINTIFF DID NOT WAIVE THE CONTRACT ISSUE
Finally, I disagree with the majority’s conclusion that plaintiff waived the argument that defendant had contractually agreed to reimburse plaintiff for the base price of the van. As the Court of Appeals noted, the basis for the trial court’s decision to deny defendant’s motion for summary disposition and instead grant plaintiff summary disposition was not a model of clarity. However, in my view, the transcript of the hearing on the motion for summary disposition reveals that the trial court based its decision on its conclusion that the “Transportation Purchase Agreement” (TPA) required defendant to pay for the reasonable purchase price of a van.[9] Moreover, the Court of Appeals opinion clearly considered the issue and ultimately determined that the TPA is ambiguous. See Admire v Auto-Owners Ins Co, *45 unpublished opinion per curiam of the Court of Appeals, issued February 15,2011 (Docket No. 289080), pp 2-3. Accordingly, both the trial court and Court of Appeals addressed the issue of whether the TPA contractually requires defendant to pay for the purchase price of the van. Thus, although I do not think that it is necessary to reach the issue because, in my view, plaintiff is entitled to the purchase price of the van under the no-fault act, even accepting the majority’s contrary conclusion on the no-fault issue, I would remand to the trial court for further consideration of the contractual issue.
V CONCLUSION
I dissent from the majority’s decision to expand the erroneous majority opinion in Griffith. Moreover, even under the majority’s faulty statutory interpretation, I believe plaintiff is entitled to benefits because the van in this case is no different from the “integrated” products that the majority offers as examples of allowable expenses under MCL 500.3107(1)(a). Finally, because both lower courts considered the argument that defendant contractually agreed to reimburse plaintiff for the base price of the van, I would not hold that the issue was waived. Accordingly, I dissent and would affirm the judgment of the Court of Appeals, or, at a minimum, remand to the trial court for further consideration of the contractual issue.
McCormack and Viviano, JJ., took no part in the decision of this case.

 MCL 500.3105(1) states:
Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter.

 MCL 500.3107(1) states in relevant part:
[Pjersonal protection insurance benefits are payable for the following:
(a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person’s care, recovery, or rehabilitation.

 The majority repeats the Griffith majority’s unfounded claim that this definition of “care” engulfs “rehabilitation” and “recovery.” Griffith, 472 Mich at 534 n 10. However, as Justice Marilyn Kelly explained, under the doctrine of noseitur a sociis, “ ‘care’ fits with ‘recovery’ and ‘rehabilitation’ when ‘care’ is interpreted broadly to mean ‘the provision of what is necessary for the welfare and protection of someone’ ” because “[t]he Legislature intended that an injured person’s needs be furnished (‘care’) until ‘recovery’ has been accomplished through ‘rehabilitation.’ ” Id. at 547 (Marilyn Kelly, J., dissenting). The majority’s overly narrow definition of “care,” however, “turns ‘care’ into a mere redundancy.” Id.

 One need only examine this Court’s recent docket to see that Griffith continues to engender confusion and, thus, litigation regarding allowable expenses. See, e.g., Krohn, 490 Mich 145, Johnson, 492 Mich 169, Douglas, 492 Mich 241, and Wilcox v State Farm Mut Auto Ins Co, 488 Mich 930, 930-932 (2010) (Cavanagh, J., dissenting).

 The majority also states that a product must be “truly integrated” to satisfy its interpretation of MCL 500.3107(1)(a), but the majority does not explain, and it is unclear to me, whether there is a difference between “combined,” “integrated,” and “truly integrated” products.

 The majority claims to merely “highlight guideposts” so that Michigan’s citizens may faithfully administer the statute’s plain language. See ante at 31 n 47. However laudable that goal might be, I disagree with establishing “guideposts” that hear no connection to the “plain language” of the statute. The majority opinion represents the latest example of the majority’s deviating from the actual language of MCL 500.3107. See, e.g., Douglas, 492 Mich at 279-287 (Cavanagh, J., dissenting) (explaining that the majority erroneously injected language not found in, and inconsistent with, the statutory language of MCL 500.3107(1)(a)); and Krohn, 490 Mich at 186-187 (2011) (Hathaway, J., dissenting) (same).

 See defendant’s answer to plaintiffs request for admissions, dated September 24, 2008 (admitting that plaintiff “has required and currently requires a modified van that accommodates his wheelchair if [plaintiff] is to drive a motor vehicle with his currently [sic] disabilities”) (emphasis added).

 The majority concludes that plaintiffs postaccident transportation needs are no different from his preaccident transportation needs, just as *43 the Griffith majority concluded that the plaintiffs postaccident food needs were no different from his preaccident food needs. Perhaps the majority is correct that the Griffith plaintiff could, after recovering in the hospital, return to his home, open the refrigerator, and eat the exact same food that he had before his injury. However, could plaintiff in this case return home after recovering in the hospital and use the exact same mode of transportation he had before his injury? Clearly, the answer is no, because the character of plaintiffs transportation needs changed as a result of the accident, contrary to the majority’s claim that a van is no different than the motorcycle plaintiff used for transportation before his accident. In fact, plaintiff could no longer ride a motorcycle or even operate a passenger car because plaintiff requires a van that is suitable for modification. Yet, by erroneously focusing on a person’s general transportation needs before an accident and defining that need too broadly, the majority’s interpretation will regrettably leave some injured parties without postaccident transportation, given the likely increased expense of purchasing a modifiable van, which many accident victims will not be able to afford.

 The parties executed the first TPA in 1988, shortly after plaintiffs 1987 motor vehicle accident. After hearing arguments, the trial court granted summary disposition in plaintiffs favor, explaining that defendant became “involved in this in ’87 and it’s gone on for some time, what, 22 years, and Pm afraid [defendant is] going to have to remain involved.” Thus, the trial court seemingly relied on the parties’ contractual history dating back to 1988 regarding the cost of the van rather them no-fault principles in granting summary disposition in favor of plaintiff.