*In re* CARROLL (ON REMAND)

Docket No. 292649. Submitted December 27, 2012, at Lansing. Decided April 2, 2013, at 9:00 a.m. Vacated and remanded for reconsideration, 493 Mich 899.

Alan A. May, conservator of the estate of Edward Carroll, a protected person, petitioned the Macomb County Probate Court to order Auto Club Insurance Association to pay his fee of $6,816.70 for serving as conservator for Auto Club's insured, Carroll, who had been injured in an automobile accident. Auto Club opposed the petition, arguing that the amount sought was not related to Carroll's care, recovery, or rehabilitation and, therefore, it was not required by MCL 500.3107(1)(a) of the no-fault act to pay petitioner's fee. The probate court, Pamela G. O'Sullivan, J., ordered Auto Club to pay $99 of the amount sought and held that Carroll's estate was liable for the remainder. May appealed. The Court of Appeals reversed and remanded the matter to the probate court, holding that May's entire fee was related to Carroll's care under MCL 500.3107(1)(a). *In re Carroll*, 292 Mich App 395 (2011). The Supreme Court, in lieu of granting Auto Club's application for leave to appeal, vacated the judgment of the Court of Appeals and remanded the matter to the Court of Appeals for reconsideration in light of *Johnson v Recca*, 492 Mich 169 (2012), and *Douglas v Allstate Ins Co*, 492 Mich 241 (2012). *In re Carroll*, 493 Mich 899 (2012).

On remand, the Court of Appeals *held*:

A conservator's fees do not necessarily constitute fees for an injured person's care, recovery, or rehabilitation under MCL 500.3107(1)(a), even when the injured person would not have needed the conservator's services were it not for his or her injuries. The conservator's fees will be compensable under MCL 500.3107(1)(a) only to the extent that the conservator's services were directly related to the injured person's care, recovery, or rehabilitation. The trial court did not err when it determined that Auto Club only had to compensate May for those services May performed as Carroll's conservator that did not amount to replacement services under MCL 500.3107(1)(c). Because May did not

challenge the probate court's findings in this regard, the determination of the probate court is affirmed.

1. A product, service, or accommodation will not be for an injured person's "care," as that term is used in MCL 500.3107(1)(a), unless the need for the product, service, or accommodation was necessitated by the injured person's injuries. Even when a particular service is necessary because of the injured person's injuries, that service will not constitute an allowable expense if the service was an ordinary service required both before and after the injury, but after the injury can no longer be provided by the injured person himself or herself. In such cases, the service is a replacement service subject to the provisions of MCL 500.3107(1)(c) and cannot serve as a basis for recovery under MCL 500.3135(3)(c).

2. Although services for an insured's care need not restore the person to his or her preinjury state, the services must be related to the insured's injuries to be considered allowable expenses under MCL 500.3107(1)(a).

3. The no-fault act does not limit who may perform what is otherwise an allowable expense under MCL 500.3107(1)(a). The provisions of MCL 500.3107(1)(a) can apply to services performed by a family member. However, services provided by a family member must be carefully distinguished from the types of services that constitute a replacement service under MCL 500.3107(1)(c). Allowable expenses under MCL 500.3107(1)(a) cannot be for ordinary and necessary services because ordinary and necessary services are not for an injured person's care, recovery, or rehabilitation.

4. Several criteria must be established before a particular product, service, or accommodation "for an injured person's care, recovery, or rehabilitation" will be compensable as an allowable expense under MCL 500.3107(1)(a). The claimed benefits must first be causally connected to the accidental bodily injury arising out of an automobile accident and the injury itself must arise from the ownership, operation, maintenance, or use of a motor vehicle.

5. Carroll suffered an injury in an automobile accident that prevented him from handling his own estate. May established the requisite causal connections between the need for his services and Carroll's injuries. Some of May's services constituted replacement services under MCL 500.3107(1)(c) and were, accordingly, not compensable under MCL 500.3107(1)(a). Some of May's services were not replacement services and were otherwise necessary for Carroll's care within the meaning of MCL 500.3107(1)(a). Carroll's need for ordinary household management is not specifically related to his injuries but he does have additional estate-management needs as a result of

his injury, needs that go far beyond those that he required before he was injured. Many of Carroll's financial-management needs are extraordinary and peculiar to his status as an injured person. Because those needs are beyond those that ordinarily would be performed by a member of the household, they are compensable under MCL 500.3107(1)(a) as a service provided for his care, recovery, or rehabilitation. May failed to identify any error warranting relief because he did not challenge the probate court's findings concerning the specific services that were compensable and the amount due for those services.

Affirmed.

1. INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE BENEFITS — CONSERVATOR'S FEES.

A conservator's fees do not necessarily constitute fees for the care, recovery, or rehabilitation of a person injured in an automobile accident even when the injured person would not have needed the conservator's services were it not for his or her injuries; a conservator's fees are compensable under MCL 500.3107(1)(a) only to the extent that the conservator's services were directly related to the injured person's care, recovery, or rehabilitation.

2. INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE BENEFITS — ALLOWABLE EXPENSES.

The Legislature, by requiring no-fault insurers to compensate injured persons for the expenses associated with products, services, and accommodations that were reasonably necessary for the injured person's care, recovery, or rehabilitation, provided that allowable expenses included expenses reasonably necessary for the care of the injured person; the Legislature did not limit allowable expenses to those expenses necessary to care for the injured person's injury (MCL 500.3107[1][a]).

3. INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE BENEFITS — ALLOWABLE EXPENSES.

When a product, service, or accommodation would not have been necessary to provide to a person but for the injuries the person sustained in an automobile accident, the product, service, or accommodation is compensable as an allowable expense for the injured person's care under MCL 500.3107(1)(a).

4. INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE BENEFITS — ALLOWABLE EXPENSES — REPLACEMENT SERVICES.

Allowable expenses and replacement services constitute separate and distinct categories of personal protection insurance benefits;

allowable expense are conceptually distinct from replacement services and do not include replacement services (MCL 500.3107[1][a] and [c]).

5. INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE BENEFITS — ALLOWABLE EXPENSES — REPLACEMENT SERVICES.

A product, service, or accommodation will not be for an injured person's "care," as that term is used in MCL 500.3107(1)(a), unless the need for. the product, service, or accommodation was necessitated by the injured person's injuries; even when a particular service is necessary because of the injured person's injuries, that service will not constitute an allowable expense if the service was required both before and after the injury, but after the injury can no longer be provided by the injured person himself or herself; in such cases it is a replacement service subject to the provisions of MCL 500.3107(1)(c) and cannot serve as a basis for recovery under MCL 500.3135(3)(c).

6. INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE BENEFITS — ALLOWABLE EXPENSES.

The no-fault act does not limit who may perform what is otherwise an allowable expense under MCL 500.3107(1)(a); allowable expenses cannot be for ordinary and necessary services because those service are not for an injured person's care, recovery, or rehabilitation.

*Kemp Klein Law Firm* (by *Alan A. May* and *Lawrence G. Snyder*) for petitioner.

*Garan Lucow Miller, P.C.* (by *Daniel S. Saylor*), for respondent.

ON REMAND

Before: BECKERING, P.J., and WHITBECK and M. J. KELLY, JJ.

M. J. KELLY, J. This case returns to us on remand from our Supreme Court. *In re Carroll*, 493 Mich 899 (2012). We previously had determined that, under MCL 500.3107(1)(a), respondent, Auto Club Insurance Association, had to pay the entire fee of petitioner, Alan A.

May, for services rendered as the conservator of Edward Carroll's estate. See *In re Carroll*, 292 Mich App 395, 407; 807 NW2d 70 (2011). We are called upon to again address this issue, but to do so in light of our Supreme Court's recent decisions in *Johnson v Recca*, 492 Mich 169; 821 NW2d 520 (2012), and *Douglas v Allstate Ins Co*, 492 Mich 241; 821 NW2d 472 (2012). After reviewing those decisions, we conclude that a conservator's fees do not necessarily constitute fees for an injured person's care, recovery, or rehabilitation, even when the injured person would not have needed the conservator's services were it not for his or her injuries. Instead, the conservator's fees will be compensable under MCL 500.3107(1)(a) only to the extent that the conservator's services were directly related to the injured person's care, recovery, or rehabilitation. Because May has not challenged the probate court's finding that only $99 of his fee was related to Carroll's care, recovery, or rehabilitation, we must affirm the probate court's order.

I. BASIC FACTS

Carroll was permanently disabled after he suffered a closed head injury in an automobile accident in 1982. *In re Carroll*, 292 Mich App at 397. Carroll's wife cared for him until she died in November 2008. *Id.* at 398. Because Carroll was incapable of managing his own property, the probate court appointed May to be Carroll's conservator in December 2008. *Id.*

In March 2009, May petitioned the probate court for an order compelling Auto Club—Carroll's no-fault vehicle insurer—to pay him $6,816.70 in fees for services rendered. *Id.* Auto Club argued that it had no obligation to pay May's fees because his fees were not allowable expenses under MCL 500.3107(1)(a). *In re Carroll*, 292 Mich App at 398. The probate court examined May's

itemized bills and determined that the majority of his services were not related to Carroll's care, recovery, or rehabilitation, as required under MCL 500.3107(1)(a). Accordingly, it ordered Auto Club to pay $99 of May's fee and it ordered Carroll's estate to pay the remainder. *In re Carroll*, 292 Mich App at 398-399.

May then appealed in this Court.

On appeal, this Court did not examine the individual services that May performed for Carroll to determine whether the specific service was for Carroll's care, recovery, or rehabilitation. Instead, we examined whether the appointment of a conservator to handle an injured person's estate was *generally* the type of service that was reasonably necessary for the injured person's care, recovery, or rehabilitation. *Id.* at 400. Relying on the expansive interpretation of the term "care" utilized by the Court in *Heinz v Auto Club Ins Ass'n*, 214 Mich App 195, 198; 543 NW2d 4 (1995), we concluded that, when a court determines that an injured person is so disabled that he or she requires a conservator to handle his or her estate, the services provided by the conservator necessarily qualify as services for the injured person's care. *In re Carroll*, 292 Mich App at 400-403. That is, we concluded that a conservator's fee will always be compensable under MCL 500.3107(1)(a) when the injured person's need for a conservator was itself causally related to an automobile accident.

We rejected Auto Club's contention that the conservator's services were not compensable under MCL 500.3107(1)(a) because the services were, in effect, replacement services under MCL 500.3107(1)(c). We recognized that the issue was complicated by the nature of the conservator's services: a conservator manages the injured person's property and business affairs, which the injured person would likely have performed

on his or her own behalf but for the accident. *In re Carroll*, 292 Mich App at 403-405. Nevertheless, we concluded that a conservator's services were closer to the "care" referred to in MCL 500.3107(1)(a) than to the "ordinary living activities" that are compensated under MCL 500.3107(1)(c). *In re Carroll*, 292 Mich App at 404. Indeed, we characterized a conservator's services as "extraordinary professional services . . . ." *Id.*

Finally, we rejected Auto Club's contention that our Supreme Court's decision in *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521; 697 NW2d 895 (2005), mandated a different result. We acknowledged that our Supreme Court had narrowly interpreted MCL 500.3107(1)(a) to require a direct link between the good or service provided and the injured person's need for care, but distinguished *Griffith* on the facts. See *In re Carroll*, 292 Mich App at 406. Specifically, we noted that there are some services that, although one might be able to characterize them as replacement services in the broadest sense, because the services are so intimately connected to the injured person's care, are compensable under MCL 500.3107(1)(a):

> The conservator's services here are more akin to attendant care provided by a nursing assistant who handles the injured person's intimate hygiene needs; in that situation, although the injured person would normally have handled those needs on his or her own, as a result of the injury he or she is no longer able to do so. Because expenses incurred to have someone perform those hygiene services are reasonably incurred for the injured person's care, recover, or rehabilitation, the nursing assistant's services are compensable under MCL 500.3107(1)(a). Similarly, because the need for the conservator was causally connected to Carroll's injury and the expense is reasonably necessary for his care, it too is compensable under MCL 500.3107(1)(a). [*In re Carroll*, 292 Mich App at 407 (citations omitted).]

We then held that May's entire fee was related to Carroll's care under MCL 500.3107(1)(a). For that reason, we reversed the probate court's opinion and order and remanded for further proceedings. *In re Carroll*, 292 Mich App at 407.

Auto Club then sought leave to appeal in our Supreme Court. Our Supreme Court initially held the application in abeyance pending its decisions in *Johnson* and *Douglas*. *In re Carroll*, 493 Mich 899. After it released those opinions, the Court, in lieu of granting leave to appeal, vacated our judgment and remanded the case back to this Court for reconsideration in light of those decisions. *Id.*

## II. FIRST PARTY NO-FAULT BENEFITS

### A. STANDARD OF REVIEW

This Court reviews de novo the proper interpretation of the no-fault act, MCL 500.3101 *et seq. Johnson*, 492 Mich at 173.

### B. NATURE OF THE BENEFITS

"A person injured in an automobile accident is entitled to a variety of personal protection insurance benefits—often referred to as PIP benefits—from his or her insurance carrier under MCL 500.3107." *In re Carroll*, 292 Mich App at 400. The statutory PIP benefits include "four general categories of expenses and losses: survivor's loss, allowable expenses, work loss, and replacement services." *Johnson*, 492 Mich at 173, citing MCL 500.3107 and MCL 500.3108. Two of those categories are relevant here: allowable expenses and replacement services.

The Legislature provided that allowable expenses consist "of all reasonable charges incurred for reason-

ably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). That is, the Legislature required no-fault insurers to compensate injured persons for the expenses associated with "products, services and accommodations" that were reasonably necessary for the "injured person's care, recovery, or rehabilitation . . . ." MCL 500.3107(1)(a). Notably, the Legislature provided that allowable expenses included expenses reasonably necessary for the care of the injured *person*; it did not limit this category to those expenses necessary to care for the injured person's *injury*. In its broadest sense, the phrase "for an injured person's care," as used in MCL 500.3107(1)(a), can refer to any product, service, or accommodation that one might use to provide for another's well-being. See *The Oxford English Dictionary* (2d ed, 1991) (defining the substantive form of the word "care" to mean "oversight with a view to protection, preservation, or guidance" and defining the verb form as "to take thought for, provide for, look after, take care of"). And traditionally this Court has construed this phrase broadly to refer to any product, service, or accommodation reasonably necessary to care for the person as an injured person. See, e.g., *Heinz*, 214 Mich App at 197-198 (rejecting the argument that the Legislature limited MCL 500.3107[1][a] to "medical care" and stating that "if a person is so seriously injured in an automobile accident that it is necessary to appoint a guardian and conservator for that person," the services are reasonably necessary to provide for the injured person's care); cf. *Griffith*, 472 Mich at 534-536.

The Legislature also provided that no-fault insurers must cover "[e]xpenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he or she had not

been injured, an injured person would have performed" for his or her own benefit or the benefit of his or her dependents. MCL 500.3107(1)(c). The Legislature did not define this benefit as the "replacement services" benefit. Nevertheless, courts commonly refer to this benefit as the "replacement services" PIP benefit. See, e.g., *Johnson*, 492 Mich at 173, 174 (inserting the label "replacement services" into the statutory scheme and referring to this benefit as the "replacement services" benefit). Traditionally, this benefit applied to all manner of ordinary or mundane household services that the injured person might have performed. See *Fortier v Aetna Cas & Surety Co*, 131 Mich App 784, 793; 346 NW2d 874 (1984) (noting that courts had applied the benefit to expenses for trash disposal, stove repairs, car maintenance, babysitting, plumbing repairs, and wood-cutting). However, beginning with its decision in *Griffith* and culminating with its decisions in *Johnson* and *Douglas*, our Supreme Court altered the analytical framework traditionally applied to the benefits provided under MCL 500.3107(1)(a) and MCL 500.3107(1)(c).

### C. *GRIFFITH*

In *Griffith*, our Supreme Court examined whether the cost of a product—food—was compensable as an allowable expense under MCL 500.3107(1)(a). Douglas Griffith had been seriously and permanently injured in a car accident and required assistance to eat and bathe. *Griffith*, 472 Mich at 524. Before returning home, his no-fault insurer had covered the full cost of his in-patient treatment, which included the cost of his meals. *Id.* at 524-525. However, after he returned home, Douglas's no-fault insurer refused to pay for his food. *Id.* at 525. Douglas's wife, Phyllis Griffith, who served as

Douglas's guardian, sued the no-fault insurer to recoup Douglas's food expenses. *Id.*

In determining whether food constituted an allowable expense, our Supreme Court began its analysis by emphasizing the limited nature of no-fault benefits: "According to the plain language of MCL 500.3105(1), a no-fault insurer is only required to pay benefits 'for accidental bodily injury' arising out of an automobile accident." *Griffith*, 472 Mich at 526. The word "for," it explained, implies a causal connection; that is, the insurer's liability to pay benefits under the no-fault act is only triggered "to the extent that the claimed benefits are causally connected to the accidental bodily injury arising out of an automobile accident." *Id.* at 531. In addition, the Court held that a no-fault insurer is liable to pay benefits only for "those injuries that are caused by the insured's use of a motor vehicle." *Id.*

The Court noted that it was uncontested that Douglas Griffith's injuries arose from his use of an automobile, but questioned whether his food expenses were causally related to his injuries: "[Phyllis Griffith] does not claim that her husband's diet is different from that of an uninjured person, that his food expenses are part of his treatment plan, or that these costs are related in any way to his injuries." *Id.* at 531. Because Douglas's food expenses were ordinary, everyday food expenses, the Court concluded that Phyllis Griffith had failed to establish that his food expenses were for accidental bodily injury, as required under MCL 500.3105(1). *Griffith*, 472 Mich at 531-532. Nevertheless, despite having determined that Phyllis had failed to establish the requisite causal link, the Court went on to explain that ordinary food would also not constitute a product for an injured person's care, recovery, or rehabilitation under MCL 500.3107(1)(a). *Griffith*, 472 Mich at 536, 540.

The Court noted that it was undisputed that Douglas's food expenses were not related to his recovery or rehabilitation: "Indeed, [Phyllis Griffith] does not allege that the food has special curative properties that might advance Griffith's recovery or rehabilitation." *Id.* at 532-533. The key issue, it explained, was whether food expenses were compensable as part of Douglas's in-home "care." Although the Court recognized that the ordinary meaning of the term "care" can be broadly understood to encompass anything that is reasonably necessary to the provision of a person's protection or charge, it concluded that the Legislature did not intend to give the term its broadest meaning. *Id.* at 533. Instead, it determined that the word "care" must be understood in context and in light of the fact that the Legislature associated it with the words "recovery" and "rehabilitation." *Id.* 533-534. Using the interpretive tool referred to as *noscitur a sociis*, the Court explained that it must give the word "care" a more limited meaning: "[W]e must neither read 'care' so broadly as to render nugatory 'recovery and rehabilitation' nor construe 'care' so narrowly that the term is mere surplusage." *Id.* at 534.

The Court then went on to conclude that the term "care" referred to the "care" necessitated by the injuries sustained in an automobile accident:

> As noted above, both "recovery" and "rehabilitation" refer to an underlying injury; likewise, the statute as a whole applies only to an "injured person." It follows that the Legislature intended to limit the scope of the term "care" to expenses for those products, services, or accommodations whose provision is *necessitated* by the injury sustained in the motor vehicle accident. "Care" is broader than "recovery" and "rehabilitation" because it may encompass expenses for products, services, and accommoda-

tions that are necessary because of the accident but that may not restore a person to his preinjury state. [*Id.* at 535 (emphasis added).]

Applying this understanding of the term "care," the Court concluded that Douglas's food expenses were not compensable. It did so, in part, because there was no evidence that "he now requires different food than he did before sustaining his injuries as part of his treatment plan." *Id.* at 536. Although it acknowledged that food was necessary for Douglas's survival, it emphasized that his need for food did not arise from his injuries:

Unlike prescription medications or nursing care, the food that [Douglas] Griffith consumes is simply an ordinary means of sustenance rather than a treatment for his "care, recovery, or rehabilitation." In fact, if [Douglas] Griffith had never sustained, or were to fully recover from, his injuries, his dietary needs would be no different than they are now. We conclude, therefore, that his food costs are completely unrelated to his "care, recovery, or rehabilitation" and are not "allowable expenses" under MCL 500.3107(1)(a). [*Griffith*, 472 Mich at 536.]

Thus, under the decision in *Griffith*, a no-fault insurer is only obligated to pay benefits for care—as that term is used in MCL 500.3107(1)(a)—when the product, service, or accommodation was necessitated by the injury; that is, if the product, service, or accommodation would not have been necessary but for the injuries sustained in the accident, then it is compensable as an allowable expense for the injured person's care under MCL 500.3107(1)(a).

D. *JOHNSON*

Our Supreme Court again considered the nature and extent of allowable expenses in *Johnson*. In that case,

John Recca struck Penny Johnson with his vehicle while she was walking. *Johnson*, 492 Mich at 172. Johnson sued Recca's no-fault insurer under MCL 500.3135(3)(c) for benefits in excess of those provided under MCL 500.3107. *Johnson*, 492 Mich at 172. On appeal, our Supreme Court had to determine whether Recca's no-fault insurer had an obligation under MCL 500.3135(3)(c) to compensate Johnson for replacement services beyond that which she would have received under MCL 500.3107(1) had she had her own no-fault insurer. *Johnson*, 492 Mich at 172-173. The Court concluded that this Court had erred when it concluded that replacement services were recoverable as a subcategory of allowable expense. *Id.* at 176.

In deciding this issue, the Court first recognized that the Legislature had abolished tort liability arising from the ownership, maintenance, or use of a motor vehicle, subject only to the exceptions stated under MCL 500.3135. *Johnson*, 492 Mich at 175. The Court then examined the exception provided under MCL 500.3135(3)(c), which provided that a person remains liable in tort for damages " 'for allowable expenses, work loss, and survivor's loss as defined in [MCL 500.3107 to MCL 500.3110] in excess of the daily, monthly, and 3-year limitations contained in those sections.' " *Johnson*, 492 Mich at 175, quoting MCL 500.3135(3) (emphasis omitted). The Court explained that this Court had erred when it treated the Legislature's reference to "allowable expenses" in MCL 500.3135(3)(c) as encompassing replacement services: "The first and most obvious criticism of the Court of Appeals' conclusion that replacement services constitutes a subcategory of allowable expenses is that this simply overlooks the Legislature's own statutory organization, which makes clear that allowable expenses and replacement services constitute separate and distinct categories of PIP benefits." *Johnson*, 492 Mich at 176. The Supreme Court concluded

that the Legislature's decision to specifically refer to allowable expenses under MCL 500.3135(3)(c) and to omit any reference to replacement services showed that the Legislature intended to abolish tort liability for replacement services. *Johnson*, 492 Mich at 175-176 ("MCL 500.3135(3)(c) does not mention damages for replacement services. Therefore, in a third-party tort action, damages for replacement services are not recoverable . . . ."). This, it explained, also followed from the Legislature's decision to organize the statutory provisions in the way that it did. *Johnson*, 492 Mich at 177 ("The Court of Appeals' interpretation improperly rendered the Legislature's organization nugatory by giving no effective meaning to the Legislature's compartmentalization of 'allowable expenses' and 'replacement services.' ").

After determining that the "clear and unambiguous" provisions in MCL 500.3135(3)(c) precluded recovery for replacement services, see *Johnson*, 492 Mich at 175-176, the Court went on to admonish the Court of Appeals for also misreading the decision in *Griffith*. It determined that this Court had erred when it applied an "overly expansive reading of *Griffith*" to conclude that the term "care," as used in MCL 500.3107(1)(a), encompassed any product, service, or accommodation that was necessitated by the injured person's injuries— including replacement services. *Johnson*, 492 Mich at 179. Instead, it held that allowable expenses are conceptually distinct from replacement services and, for that reason, do not include replacement services:

> As we noted in *Griffith*, "the statute does not require compensation for any item that is reasonably necessary to a person's care *in general*." *Griffith*, 472 Mich at 534 (emphasis added). Rather, such care "must be related to the insured's injuries." *Id.* In *Griffith*, the plaintiff's food costs were not allowable expenses because "if Griffith had never sustained, or were to fully recover from, his injuries, his

dietary needs would be no different than they are now." *Id.* at 536. Accordingly, allowable expenses do not include expenses for products or services that are required after the injury in a manner indistinguishable from those required before the injury. Those services are not properly characterized as "related to the insured's injuries."

> Services that were required both before and after the injury, but after the injury can no longer be provided by the injured person himself or herself *because* of the injury, are "replacement services," not "allowable expenses." They are services "in lieu of those that, if he or she had not been injured, an injured person would have performed . . . for the benefit of himself or herself . . . ." MCL 500.3107(1)(c). Thus, contrary to the Court of Appeals' interpretation of *Griffith*'s definition of "care," replacement services is not "merely one category of allowable expenses"; rather, allowable expenses and replacement services are separate and distinct categories of PIP benefits. [*Johnson,* 492 Mich at 179-180.]

Accordingly, *Griffith* established that a product, service, or accommodation will not be for an injured person's "care," as that term is used in MCL 500.3107(1)(a), unless the need for the product, service, or accommodation was necessitated by the injured person's injuries. *Griffith,* 472 Mich at 535. However, under the decision in *Johnson,* even when a particular service is necessary because of the injured person's injuries, that service will not constitute an allowable expense if the service was "required both before and after the injury, but after the injury can no longer be provided by the injured person himself or herself . . . ." *Johnson,* 492 Mich at 180. In such cases, the service is a replacement service subject to the provisions of MCL 500.3107(1)(c) and cannot serve as the basis for recovery under MCL 500.3135(3)(c). *Johnson,* 492 Mich at 180, 197.

E. *DOUGLAS*

Finally, in *Douglas*, our Supreme Court further refined its understanding of the term "care" to provide guidance on the types of services that will constitute an allowable expense under MCL 500.3107(1)(a). In that case, an unidentified driver struck James Douglas while he was riding his bicycle. *Douglas*, 492 Mich at 249. Douglas suffered a severe closed head injury from the hit-and-run accident, which led to psychiatric problems including difficulty with his short-term memory, impulsivity, and two suicide attempts. *Id.* at 250. Douglas eventually sued the insurer assigned to cover his claims for failing to pay PIP benefits. *Id.* at 250-251.

On appeal, our Supreme Court had to consider whether and to what extent Douglas was entitled to compensation for the attendant care services that his wife performed, and, specifically, whether his wife's services were allowable expenses under MCL 500.3107(1)(a) or, in the alternative, replacement services under MCL 500.3107(1)(c). *Douglas*, 492 Mich at 255. Citing its decision in *Griffith*, the Court first reemphasized that MCL 500.3105(1) imposes an obligation to pay benefits on an insurer only when two threshold causation requirements are met: (1) the claimed benefits must be " 'causally connected to the accidental bodily injury arising out of an automobile accident' " and (2) the injury itself must arise from the ownership, operation, maintenance, or use of a motor vehicle. *Douglas*, 492 Mich at 257, quoting *Griffith*, 472 Mich at 531. It then went on to note that MCL 500.3107(1)(a) and MCL 500.3107(1)(c) impose further restrictions on the benefits. *Douglas*, 492 Mich at 257-258. These additional limits were important, the Court explained, because the allowable-expense benefit was subject to the one-year-back rule, see MCL

500.3145(1), and an injured person could only recover for replacement services for the first three years after the accident. *Douglas*, 492 Mich at 258-259. Given that Douglas's wife provided her services long after the expiration of the three-year period, Douglas would only be entitled to compensation for those services that qualified as allowable expenses and then only for those expenses incurred after May 31, 2004. *Id.* at 259.

Turning to what constitutes "care" for purposes of MCL 500.3107(1)(a), the *Douglas* Court reaffirmed that "care" has a limited meaning: "although services for an insured's care need not restore a person to his preinjury state, the services must be related to the insured's injuries to be considered allowable expenses." *Douglas*, 492 Mich at 260. The Court then approvingly cited cases from this Court for the proposition that the no-fault act does not limit who "may perform what is otherwise an allowable expense" under MCL 500.3107(1)(a). *Douglas*, 492 Mich at 261, citing *Van Marter v American Fidelity Fire Ins Co*, 114 Mich App 171; 318 NW2d 679 (1982), and *Visconti v Detroit Auto Inter-Ins Exch*, 90 Mich App 477; 282 NW2d 360 (1979). Thus, MCL 500.3107(1)(a) can apply to services performed by a family member:

> A subsequent Court of Appeals panel applied *Visconti* and allowed the plaintiff to recover no-fault benefits when a family member was "required to serve his meals in bed, bathe him, escort him to the doctor's office, exercise him in conformity with his doctor's instructions, assist in formulating his diet, administer medication, and assist him with speech and associational therapy." The Court also held that, even though the family member who provided these services was not a licensed medical care provider, "[t]he statute does not require that these services be supplied by 'trained medical personnel'." In other words, while the no-fault act specifies and limits what types of expenses are compensable, it places no limitation on *who* may perform

what is otherwise an allowable expense. [*Douglas*, 492 Mich at 261, quoting *Van Marter*, 114 Mich App at 180.]

However, the Court clarified that allowable expenses "cannot be for 'ordinary and necessary services' because ordinary and necessary services are not 'for an injured person's care, recovery, or rehabilitation.' " *Douglas*, 492 Mich at 262.

Examining the facts applicable to its case, the Court held that Douglas was potentially entitled to compensation for his wife's services:

> The Court of Appeals rejected defendant's claim that Mrs. Douglas only provided replacement services and compared the claimed supervision with this state's workers' compensation caselaw that allows "on-call" supervision, even when the care provider is pursuing other tasks while on call. We affirm the result of the Court of Appeals on this issue and hold that defendant is not entitled to a verdict of no cause of action on the basis of its claim that Mrs. Douglas *only* provided replacement services because there was testimony given at trial that at least some of the services she said she had provided were consistent with the requirement of MCL 500.3107(1)(a) that allowable expenses be for an injured person's care as necessitated by the injury sustained in the motor vehicle accident. For instance, even if Mrs. Douglas's claimed supervision of plaintiff does not restore plaintiff to his preinjury state, testimony given at trial indicates that arguably at least some of this claimed supervision was for plaintiff's care as necessitated by the injury sustained in the motor vehicle accident and not for ordinary and necessary services that every Michigan household must undertake. Accordingly, defendant is not entitled to relief on the claim that *none* of Mrs. Douglas's claimed services could be considered attendant care services within the meaning of MCL 500.3107(1)(a). [*Douglas*, 492 Mich at 263-264.][1]

---

[1] The Court also examined the proofs necessary to establish that the expenses were reasonably necessary, actually incurred, and amounted to

The decision in *Douglas* clarified that an injured person may be entitled to compensation for services necessitated by his or her injury and performed for his or her care as an allowable expense under MCL 500.3107(1)(a) and that such services may be compensable even when performed by a family member; the Court, however, reiterated that the services provided by a family member must be carefully distinguished from the types of services that constitute a replacement service under MCL 500.3107(1)(c). *Douglas*, 492 Mich at 262.

F. SYNTHESIZING *GRIFFITH, JOHNSON,* AND *DOUGLAS*

Examining the decisions in *Griffith, Johnson,* and *Douglas* together, it is evident that there are several criteria that must be established before a particular product, service, or accommodation "for an injured person's care, recovery, or rehabilitation" will be compensable as an allowable expense under MCL 500.3107(1)(a). The claimed benefits must first be " 'causally connected to the accidental bodily injury arising out of an automobile accident' " and the injury itself must arise from the ownership, operation, maintenance, or use of a motor vehicle. *Douglas*, 492 Mich at 257, quoting *Griffith*, 472 Mich at 531. Allowable benefits are, however, limited to those benefits that are for the injured person's care, recovery, or rehabilitation, which means that the product, service, or accommodation must have been "necessitated by the injury sustained in the motor vehicle accident." *Griffith*, 472 Mich at 535. Moreover, even when a particular service is necessitated by the injured person's injuries, that service will not constitute an allowable expense if the

---

a reasonable charge. *Douglas*, 492 Mich at 264-277. However, those elements are not at issue in this case.

service is an ordinary service that was "required both before and after the injury, but after the injury can no longer be provided by the injured person himself or herself . . . ." *Johnson*, 492 Mich at 180. In such cases, the service is a replacement service that is compensable, if at all, under MCL 500.3107(1)(c), and not under MCL 500.3107(1)(a). *Johnson*, 492 Mich at 180.

### III. APPLYING THE LAW

In this case, it is undisputed that Carroll suffered a closed head injury in an automobile accident and that his head injury prevented him from handling his own estate. For that reason, May has established the requisite causal connections between his services and Carroll's injuries: the probate court appointed May to serve as Carroll's conservator because the head injury that Carroll suffered during an automobile accident so incapacitated him that he can no longer manage his estate. See *Douglas*, 492 Mich at 257. Similarly, because Carroll cannot manage his own estate as a result of his injuries, it follows that May's services were necessitated by those injuries. *Griffith*, 472 Mich at 535. Thus, the only remaining question is whether May's services were for ordinary and necessary services that Carroll would have performed for himself had he not been injured.

Examining the evidence, we conclude that some of May's services constituted replacement services under MCL 500.3107(1)(c) that were, accordingly, not compensable under MCL 500.3107(1)(a). However, we also conclude that some of May's services were not replacement services and were otherwise necessary for Carroll's care within the meaning of MCL 500.3107(1)(a).

The average member of a Michigan household manages his or her own estate on a day-to-day basis; ordinary people pay bills, make deposits, buy and sell

property, hire brokers, and otherwise plan for their future needs. Carroll's need for ordinary household management existed before his accident and continued to exist after his accident. Therefore, to the extent that May performed those services for Carroll, they would be compensable under MCL 500.3107(1)(c), rather than under MCL 500.3107(1)(a), because his need for ordinary household management is not specifically related to his injuries. See *Johnson*, 492 Mich at 180.

But Carroll also clearly had, and presumably continues to have, additional estate-management needs as a result of his head injury—needs that go far beyond those that he required before he was injured. Carroll requires someone to manage his medical bills, negotiate with medical providers and insurers, and marshal his assets and handle them in a way that will ensure that he can continue to receive the best possible physical and mental care. As our Supreme Court approvingly noted in *Douglas*, attendant care can include services that the injured person might have performed before he or she was injured as long as those services are not the type of ordinary tasks that a family member might perform for the benefit of the household as a whole. See *Douglas*, 492 Mich at 261 (noting that allowable expenses include services such as serving the injured person meals in bed, aiding the injured person with bathing, dressing, and exercise, and escorting the injured person to the doctor, administering medication, and assisting with dietary planning and therapies). Although these services will typically be related to the injured person's physical care, we must emphasize that the Legislature did not define allowable expenses to include only those expenses that involve the direct application of care to the injured person. Rather, the Legislature provided that compensation must be made for "products, services and accommodations" for the *"injured person's* care,

recovery, or rehabilitation." MCL 500.3107(1)(a) (emphasis added). That is, the care need not be specifically directed to the care of the injured person's injury or disability, but rather must be related to his or her peculiar needs as an *injured person.* See *In re Geror,* 286 Mich App 132, 135-136; 779 NW2d 316 (2009) (holding that a lawyer's fees were an allowable expense under MCL 500.3107(1)(a) because they were related to ensuring that the injured person received the necessary care).

Consequently, consistent with *Griffith, Johnson,* and *Douglas,* if an injured person—by reason of his or her injuries—requires a service in order to ensure his or her proper care, and that service does not amount to a replacement service under MCL 500.3107(1)(c), it will be compensable under MCL 500.3107(1)(a). See *Johnson,* 492 Mich at 180; *Douglas,* 492 Mich at 262-264; *Griffith,* 472 Mich at 535. Here, many of Carroll's financial-management needs are extraordinary and peculiar to Carroll's status as an *injured person.* And, because those needs are beyond those that would ordinarily be performed by a member of the household, they are compensable under MCL 500.3107(1)(a) as a service provided for Carroll's care, recovery, or rehabilitation.

The probate court correctly determined that some of May's services as Carroll's conservator were compensable under MCL 500.3107(1)(a) and some were not because they were for ordinary and necessary household services that were compensable under MCL 500.3107(1)(c) and were incurred more than three years after Carroll's accident. Moreover, May did not challenge the probate court's findings concerning the specific services that were compensable and the amount due for those services. Consequently, May has not identified any error warranting relief.

IV. CONCLUSION

The probate court did not err when it determined that Auto Club only had to compensate May for those services he performed as Carroll's conservator that did not amount to replacement services under MCL 500.3107(1)(c). Because May did not challenge the probate court's specific findings in this regard, we must affirm.

Affirmed. As the prevailing party, Auto Club may tax its costs. MCR 7.219(A).

BECKERING, P.J., and WHITBECK, J., concurred with M. J. KELLY, J.