*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

In re Guardianship of AMANDA KHEMMORO.

---

ANDY KHEMMORO and WAYLET
KHEMMORO, Guardians of AMANDA
KHEMMORO, a legally protected person,

      Petitioners-Appellees,

v

AUTO-OWNERS INSURANCE COMPANY,

      Respondent-Appellant.

UNPUBLISHED
June 27, 2019

No. 342667
Macomb Probate Court
LC No. 2014-012890-DD

---

Before: MURRAY, C.J., and STEPHENS and SHAPIRO, JJ.

PER CURIAM.

Respondent appeals the probate court's order granting petitioners attorney fees and costs in this no-fault related guardianship matter. We affirm.

This matter arises from the appointment of petitioners as co-guardians of their daughter, Amanda Khemmoro. In July 2004, Amanda was in a car accident when she was eight years old and sustained a traumatic brain injury. Respondent is the no-fault insurer responsible for paying Amanda personal protection insurance (PIP) benefits arising out of the accident.

As a result of a third-party tort action, Amanda received a settlement award in excess of $800,000. Petitioners filed for guardianship of Amanda in January 2014 because Amanda had cognitive impairments, and required assistance with all activities of daily living. Petitioners were appointed as Amanda's co-guardians in February 2014 for a term of five years. In September 2014, the court granted petitioners' motion to invest Amanda's settlement funds, and open accounts with Oppenheimer & Co., Inc., to earn a greater annual income from the funds. A "restricted account agreement" was filed with the court, which required a court order before any funds could be released from the accounts.

In January 2015, petitioners filed a motion for reimbursement of expenses spent on Amanda's behalf and for authorization of a monthly stipend for Amanda to be withdrawn from the Oppenheimer accounts. A guardian ad litem (GAL) was appointed to review the motion on Amanda's behalf. The GAL recommended approval of the reimbursement amount and a $1,100 monthly stipend to be used for Amanda's personal expenses. The probate court approved the total amount requested to be withdrawn from Amanda's Oppenheimer accounts, as well as the monthly stipend.

Over the next few years, petitioners brought three more motions seeking reimbursement from the Oppenheimer accounts for funds expended on Amanda. Petitioners were represented by attorney Eugene Casazza in those proceedings. Casazza also provided services to petitioners in connection with the annual accountings and fiduciary reports that were filed with and approved by the court.

In September 2017, petitioners filed a petition for attorney fees and costs for Casazza's legal services relating to the most recent motion for reimbursement and annual accounting. Petitioners explained that respondent previously paid attorney fees and costs submitted by Casazza for services related to administration of Amanda's estate in 2014, 2015, and 2016, but now declined payment on the grounds that such services were not related to Amanda's medical care.

In response, respondent did not dispute that services related to the filing of the annual accounting and fiduciary report were compensable. But respondent argued that services pertaining to management of the estate's funds did not constitute an "allowable expense" under the no-fault act, MCL 500.3101 *et seq*. Respondent explained that it previously paid petitioners' attorney fees for administration of Amanda's estate because it mistakenly thought that Casazza was Amanda's guardian or conservator.

In December 2017, the probate court issued an opinion and order granting petitioners' request for attorney fees and costs. The court determined that the legal fees at issue were compensable as allowable expenses because they resulted from Amanda's needs as an injured person, and exceeded what she would have otherwise required but for the auto accident. The court was not persuaded that the legal services constituted "replacement services" under the no-fault act because "[t]hese are not services Amanda would ordinarily have required before the accident." The court denied respondent's motion for reconsideration.

On appeal, respondent argues that the probate court erred in granting petitioners' motion for attorney fees and costs because these expenses were replacement services that were statutorily time barred, rather than recoverable allowable expenses. We disagree.[1]

---

[1] We review de novo whether an expense is an allowable expense under the no-fault act. See *Griffith ex rel Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 525-526; 697 NW2d 895 (2005).

Under the no-fault act, "[a] person injured in an automobile accident is entitled to a variety of personal protection insurance benefits—often referred to as PIP benefits—from his or her insurance carrier under MCL 500.3107." *In re Carroll (On Remand)*, 300 Mich App 152, 159; 832 NW2d 276 (2013) (quotation marks and citation omitted). There are four general categories of expenses and losses that are covered by personal protection insurance (PIP) benefits: survivor's loss, allowable expenses, work loss, and replacement services. MCL 500.3107; MCL 500.3108; *In re Carroll (On Remand)*, 300 Mich App at 159. The two categories relevant to this appeal are allowable expenses, MCL 500.3107(1)(a), and replacement services, MCL 500.3107(1)(c).

PIP benefits include "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation . . . ." MCL 500.3107(1)(a). Allowable expenses are not limited to medical care, but must be "causally connected to the injured person's care, recovery, or rehabilitation." *In re Estate of Shields*, 254 Mich App 367, 370; 656 NW2d 853 (2002). PIP benefits also include what courts have referred to as "replacement services," defined as follows:

> Expenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he or she had not been injured, an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or herself or of his or her dependent. [MCL 500.3107(1)(c).]

This provision traditionally applied to ordinary or mundane household services. *In re Carroll (On Remand)*, 300 Mich App at 161.

We previously determined that expenses associated with guardianship and other services may be considered allowable expenses pursuant to MCL 500.3107(1)(a). See *Heinz v Auto Club Ins Ass'n*, 214 Mich App 195, 197-198; 543 NW2d 4 (1995). We have also held that attorney fees are allowable expenses when they were necessary to ensure that the injured person was receiving the necessary care. *In re Geror*, 286 Mich App 132, 135-136; 779 NW2d 316 (2009).

Most recently, in *In re Carroll (On Remand)*, 300 Mich App at 171-172, we determined after a thorough review of Michigan Supreme Court caselaw that the following criteria must be met for a service to be compensable as an allowable expense under MCL 500.3107(1)(a):

> The claimed benefits must first be " 'causally connected to the accidental bodily injury arising out of an automobile accident' " and the injury itself must arise from the ownership, operation, maintenance, or use of a motor vehicle. Allowable benefits are, however, limited to those benefits that are for the injured person's care, recovery, or rehabilitation, which means that the product, service, or accommodation must have been "necessitated by the injury sustained in the motor vehicle accident." Moreover, even when a particular service is necessitated by the injured person's injuries, that service will not constitute an allowable expense if the service is an ordinary service that was "required both before and after the injury, but after the injury can no longer be provided by the injured person himself or herself . . . ." In such cases, the service is a replacement

service that is compensable, if at all, under MCL 500.3107(1)(c), and not under MCL 500.3107 (1)(a). [Citations omitted.]

In that case, a conservator was appointed after the injured person suffered a closed head injury in an auto accident that prevented him from handling his own estate. *Id*. at 172. The issue was whether the conservator's services were for ordinary and necessary services that the injured person would have performed had he not been injured. *Id*. We determined that the conservator's performance of services constituting "ordinary household management," such as paying bills and making deposits, were compensable as replacement services rather than allowable expenses because the injured person performed those tasks before the accident. *Id*. at 172-173. In other words, the injured person's "need for ordinary household management [was] not specifically related to his injuries." *Id*. at 173.

However, we concluded that the conservator performed "additional estate management" services for the injured person that were compensable as allowable expenses. *Id*. at 173-174. The conservator performed services for the injured person that went "far beyond those that he required before he was injured," including managing his medical bills and "handling his assets and handle them in a way that will ensure that he can continue to receive the best possible physical and mental care." *Id*. at 173. We emphasized that allowable expenses were not confined to services related to the injured person's physical care:

> Although these services will typically be related to the injured person's physical care, we must emphasize that the Legislature did not define allowable expenses to include only those expenses that involve the direct application of care to the injured person. Rather, the Legislature provided that compensation must be made for "products, services and accommodations" for the *"injured person's* care, recovery, or rehabilitation." MCL 500.3107(1)(a) (emphasis added). That is, the care need not be specifically directed to the care of the injured person's injury or disability, but rather must be related to his or her peculiar needs as an *injured person*. [*Id*. at 173-174 (citation omitted).]

In sum, we concluded that "if an injured person—by reason of his or her injuries—requires a service in order to ensure his or her proper care, and that service does not amount to a replacement service under MCL 500.3107(1)(c), it will be compensable under MCL 500.3107(1)(a)." *Id*. at 174. Services relating to the injured person's "financial-management needs" were compensable because those needs were "extraordinary and peculiar to [the injured person's] status as an *injured person*" and those needs were "beyond those that would ordinarily be performed by a member of the household . . . ." *Id*.

In this case, respondent concedes that the attorney fees related to the preparation of the guardians' annual accounting and fiduciary report are compensable as allowable expenses. Thus, the only question is whether petitioners may recover attorney fees for Casazza's services relating to the motion for reimbursement of expenses.

It is clear that the legal services rendered to withdraw funds from Amanda's Oppenheimer accounts were causally connected to the brain injury she suffered in the auto accident. Petitioners were appointed Amanda's co-guardians as result of that injury, and then

-4-

petitioners received the probate court's permission to invest the settlement funds pertaining to the accident. As a condition, however, court-ordered approval was required before any funds could be released to petitioners. And Casazza's legal services were reasonably necessary to that procedure.

It is also clear that the legal fees at issue do not relate to a service that was required before the accident, i.e., replacement services. The court procedure needed to access the settlement funds are "extraordinarily and peculiar" to Amanda's status as an injured person. *Id*. at 174. Had Amanda not been injured and legally incapacitated as a result of the auto accident, she would not have required court authorization to access her settlement funds. Petitioners are specifically seeking reimbursement for Casazza's legal services relating to the fourth motion for reimbursement, the GAL report prepared concerning that motion, and the objections filed by petitioners to that report. These services do not constitute replacement services because they would not have been necessary to access any of Amanda's funds before the accident and they are "beyond those that would ordinarily be performed by a member of the household . . . ." *Id*. at 174.

The only remaining issue is whether the legal services pertaining to the motion for reimbursement were for Amanda's care. Respondent argues that those services are not compensable as allowable expenses because they were not related to Amanda's medical care. As explained, however, the word "care" as used in MCL 500.3107(1)(a) is not confined to medical or physical care but instead must relate to Amanda's peculiar needs as an injured person. See *id*. In *In re Carrol (On Remand)*, the estate-management services were allowable expenses because they were necessary to ensure that the injured person would continue to receive "the best possible physical and mental care." *Id*. at 173. Here, the settlement funds exist for the purpose of ensuring Amanda's proper care. And the court approval necessary to access the settlement funds—and the corresponding legal services—ensures that those funds will only be used for legitimate purposes and that there will sufficient funds for Amanda's care. Accordingly, the legal services satisfy the "care" element of allowable expenses as defined by caselaw.

In sum, the legal services relating to the withdrawal of settlement funds from restricted accounts were necessitated by Amanda's injuries from the auto accident and are unique and peculiar to her status as an injured person. Those services were also necessary to the court-ordered procedure to protect funds that exist for Amanda's care. For those reasons, the probate court correctly concluded that requested attorney fees were compensable allowable expenses under MCL 500.3107(1)(a).

Affirmed.

/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro