# STATE OF MICHIGAN

# COURT OF APPEALS

LINDITA PIRGU, Guardian and Conservator of
FERIDON PIRGU, a Legally Incapacitated
Person,

        Plaintiff-Appellant,

v

UNITED STATES AUTOMOBILE
ASSOCIATION, d/b/a USAA INSURANCE
AGENCY, INC.,

        Defendant-Appellee.

UNPUBLISHED
December 16, 2014

No. 314523
Oakland Circuit Court
LC No. 2011-119378-NI

Before: BECKERING, P.J., and HOEKSTRA and GLEICHER, JJ.

PER CURIAM.

In this action by plaintiff, Lindita Pirgu, guardian and conservator of Feridon Pirgu, a legally incapacitated person, to determine Feridon's entitlement to no-fault personal protection insurance (PIP) benefits, plaintiff appeals as of right the trial court's January 9, 2013 order that granted judgment in favor of plaintiff in the amount of $70,237.44 for attendant care benefits, wage loss benefits, and penalty interest. In addition, the order granted plaintiff $23,412.48 in attorney fees against defendant, United Service Automobile Association, d/b/a USAA Insurance Agency, Inc., for defendant's unreasonable failure to pay PIP benefits. Plaintiff challenges the amount of attorney fees awarded, the propriety of the jury's determination that Feridon was not entitled to future PIP benefits, and the trial court's denial of attorney fees for services provided by the Findling Law Firm, the firm retained to represent plaintiff in her role as guardian and conservator. We affirm in part, reverse in part, and remand in part for further proceedings consistent with this opinion.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On approximately October 15, 2008, Feridon, who did not have no-fault insurance, was riding his bicycle and was struck by one of defendant's insureds. Feridon sustained a closed head injury in the accident. In December of 2008, Lindita, Feridon's wife, was appointed guardian and conservator for Feridon. Plaintiff sought PIP benefits for Feridon shortly after the accident in the form of: (1) reasonable charges incurred for products, services, and accommodations that were reasonably necessary for Feridon's care; (2) loss of wages because Feridon was unable to work; and (3) daily expenses for attendant care for Feridon. Plaintiff

-1-

alleged that Feridon required 24-hour attendant care. Because Feridon was uninsured, his claim for no-fault benefits was originally assigned to the Michigan Assigned Claims Facility, which assigned the claim to Citizens Insurance Company. Citizens initially paid PIP benefits to plaintiff. Following a priority dispute between Citizens and defendant, defendant was determined to have first priority for the payment of PIP benefits. Thereafter, defendant conducted surveillance on Feridon and required him to submit to independent medical examinations. As a result of its investigations, defendant ceased paying PIP benefits in approximately October 2010.

The matter proceeded to trial and the jury awarded relief to plaintiff as noted above. The extent of Feridon's injuries and the amount of the jury award for attendant care benefits is not at issue on this appeal.

## II. ATTORNEY FEES UNDER MCL 500.3148(1)

The trial court awarded attorney fees to plaintiff pursuant to MCL 500.3148(1) for defendant's unreasonable delay and/or failure to pay PIP benefits. Plaintiff argues that the trial court abused its discretion in awarding only $23,412.48 in attorney fees and that the trial court should have engaged in the analysis set forth by our Supreme Court in *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008). We review the trial court's decision to award attorney fees and its determination as to the reasonableness of the fees for an abuse of discretion. *Augustine v Allstate Ins Co*, 292 Mich App 408, 424; 807 NW2d 77 (2011). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Edge v Edge*, 299 Mich App 121, 127; 829 NW2d 276 (2012) (citation and quotation omitted).

"The general 'American rule' is that attorney fees are not ordinarily recoverable unless a statute, court rule, or common-law exception provides the contrary." *Smith*, 481 Mich at 526 (citation and quotation omitted). "In no-fault personal injury protection insurance cases, MCL 500.3148(1) permits a claimant to obtain attorney fees from an insurer 'if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.'" *Brown v Home-Owners Ins Co*, 298 Mich App 678, 690; 828 NW2d 400 (2012), quoting MCL 500.3148(1).

Plaintiff contends that the trial court was required to follow the framework that our Supreme Court set forth in *Smith*, 481 Mich at 528-530, for determining the reasonableness of attorney fees in certain situations. This framework requires a trial court to "begin its analysis by determining the fee customarily charged in the locality for similar legal services . . . ." *Id.* at 530. "Once the trial judge has determined this hourly rate, the judge must multiply this rate by the reasonable number of hours expended in the case. The product of this calculation serves as the starting point for calculating a reasonable attorney fee." *Adair v Michigan (On Fourth Remand)*, 301 Mich App 547, 552; 836 NW2d 742 (2013). This amount can then be adjusted based on a variety of factors, including those set forth in *Wood v DAIIE*, 413 Mich 573, 588; 321

NW2d 653 (1982)[1], Michigan Rules of Professional Conduct 1.5(a)[2], and other relevant factors. *Smith*, 481 Mich at 529-531.

In the case at bar, the trial court did not begin its analysis of plaintiff's attorney fee award by multiplying a reasonable hourly rate by a reasonable number of hours. Rather, the trial court noted that the jury awarded plaintiff approximately 33 percent of the amount she requested and awarded attorney fees by calculating approximately 33 percent of the jury verdict. Upon objections by plaintiff's counsel, and over the course of two hearings and much discourse on the topic, the trial court acknowledged many of the factors set forth in *Wood* and MRPC 1.5(a) and concluded that its award of attorney fees was reasonable. The trial court also found that plaintiff's counsel "fumbled around" during trial and *de bene esse* depositions, and that some of the hours billed by plaintiff's counsel were unnecessary.

In light of binding precedent to the contrary, plaintiff is incorrect in contending that the trial court was required to follow the *Smith* framework when assessing attorney fees. *Univ Rehab Alliance, Inc v Farm Bureau General Ins Co of Michigan*, 279 Mich App 691, 700 n 3; 760 NW2d 574 (2008). A panel of this court in *Univ Rehab Alliance* expressly rejected the

---

[1] The *Wood* factors are: "(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client." *Wood*, 413 Mich at 588 (internal quotation marks and citation omitted).

[2] MRPC 1.5(a) sets forth the following factors to be considered in determining the reasonableness of a fee:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

defendant's argument that *Smith* applies when determining an award of attorney fees under MCL 500.3148(1) and that, pursuant to *Smith*, a trial court must first determine a "baseline" fee by multiplying the reasonable hourly-rate—the fee customarily charged in the locality for similar legal services—and then adjust the fee upward or downward according to the factors set forth in *Wood* and MRPC 1.5(a). *Id*. Unless and until a conflict panel determines otherwise or our Supreme Court weighs in on the issue of whether *Smith* applies to a determination of attorney fees under MCL 500.3148(1), we are bound by *Univ Rehab Alliance*.[3]

In *Univ Rehab Alliance*, this Court applied the factors set forth in *Wood*, which specifically dealt with the reasonableness of an award of attorney fees under MCL 500.3148(1), as well as the factors set forth in MRPC 1.5(a). *Id*. at 698-699. A court is not precluded from considering additional factors, and it "'need not detail its findings as to each specific factor considered.'" *Id*. at 699, quoting *Wood*, 413 Mich at 588. In *Univ Rehab Alliance*, this Court affirmed a trial court's attorney fee award under MCL 500.3148 consistent with the plaintiff's contingent-fee agreement with her counsel, even though it amounted to, according to defendant, "over $1,600 an hour." *Id*. at 698. Noting that consideration of a contingent-fee agreement is one of the factors set forth in MRPC 1.5(a) and was considered in several other cases assessing a reasonable attorney fee under MCL 500.3148(1), this Court held that "a reasonable attorney fee is determined by considering the totality of the circumstances. While a contingent fee is neither presumptively reasonable nor presumptively unreasonable, multiplying the reasonable number of hours worked by a reasonable hourly rate [which it dubbed the "lodestar" method] is not the preferred method." *Id*. at 700.[4] The Court noted that the trial court employed the required

---

[3] Although plaintiff cites to *Prins v Michigan State Police*, 299 Mich App 634; 831 NW2d 867 (2013) for the proposition that *Smith* applies in the instant case, *Prins* pertained to a plaintiff's entitlement to attorney fees pursuant to the Freedom of Information Act, and relied on a Supreme Court order in *Coblentz v City of Novi*, 485 Mich 961; 774 NW2d 526 (2009). Notably, in his dissenting opinion in *Smith*, Justice Michael Cavanagh criticized the majority for leaving unclear the issue of whether *Smith* applies when determining reasonable attorney fees outside the context of MCR 2.403: "[t]he majority opinion does not define the scope of its new law. The majority has articulated a new rule for attorney-fee awards under MCR 2.403; yet that new test's application to other attorney-fee contexts is left for its readers to ponder. . . . does this new rule apply to other fee-shifting provisions?" *Smith*, 481 Mich at 554-555. The Supreme Court denied leave in *Univ Rehab Alliance* and has not otherwise held that *Smith* applies when determining attorney fees under MCL 500.3148(1). Thus, we are bound by *Univ Rehab Alliance*.

[4] In concluding that the analysis set forth in *Smith* does not apply to an award of attorney fees under the no-fault act, we acknowledge another panel of this Court's decision in *Augustine*, 292 Mich App at 429, wherein the Court opined that the *Smith* analysis must be applied to an award of attorney fees under MCL 500.3148(1). However, that opinion was non-binding dictum because it was unnecessary to a resolution of that case. See *Carr v Lansing*, 259 Mich App 376, 383-384; 674 NW2d 168 (2003) (citation and quotations omitted) ("[D]ictum is a judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential . . . ."). At issue in *Augustine*, 292 Mich App at 413, was whether the trial court followed the panel's directive on remand to undertake an

multifactor analysis and did not abuse its discretion awarding the contingent fee as a reasonable fee within the range of reasonable and principled outcomes. *Id*. at 702.

In light of the conclusion that the analysis in *Smith* does not apply, the issue becomes whether, under *Univ Rehab Alliance*, the trial court's award of attorney fees was reasonable. Because we may only reverse when a trial court has abused its discretion, wherein its ruling falls outside the range of reasonable and principled outcomes, we affirm the trial court's attorney fee award. The crux of the trial court's reasoning concerning the reasonableness of plaintiff's attorney fee award was to take into consideration the results achieved. Plaintiff requested approximately $200,000 or approximately $400,000, depending on whether attendant care benefits were calculated at $12 per day or $24 per day. Plaintiff was ultimately awarded $70,237.44, which is approximately 35 percent of a $200,000 award, and approximately 18 percent of a $400,000 award. Thus, as the trial court recognized, the results achieved were considerably less than the amount in question; this was an appropriate factor for the trial court to consider. *Univ Rehab Alliance*, 279 Mich App at 698-699; *Wood*, 413 Mich at 588; MRPC 1.5(a)(4). The attorney fee award is also commensurate with what plaintiff's counsel would receive under the contingent fee agreement, which is another fair consideration. See *Univ Rehab Alliance*, 279 Mich App at 699; MRPC 1.5(a)(8). Further, although the trial court awarded plaintiff's counsel considerably less than the amount sought, the trial court expressly found that not all of the hours expended by counsel in this case were necessary. The trial court noted, "I sat through the trial, I watched the depositions, you fumbled around, forever, at times, took much longer than it had to take." The trial court was permitted to consider the time spent on the case in determining the reasonableness of the fee award, *Wood*, 413 Mich at 588, as well as any other relevant factors, such as the attorney's skill and efficacy. In addition, the record reveals that the

analysis under *Smith* in order to determine the reasonableness of attorney fees sought under MCL 500.3148(1). The prior panel in *Augustine* concluded that the analysis set forth in *Smith* must be applied to an award of attorney fees under MCL 500.3148(1). *Augustine v Allstate Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued August 21, 2008 (Docket No. 276537), at 3. On remand, the trial court did not follow the *Smith* framework. *Augustine*, 292 Mich App at 427-428. This Court held that the law of the case doctrine, which applies regardless of the correctness of the prior decision, required the trial court to follow its directive to undertake the analysis set forth in *Smith*. *Id*. at 428-429. In addition, the panel opined that "even were it not the law of this case as a result of *Augustine I*, the trial court should have applied *Smith,* because the framework outlined in *Smith* is the proper standard to be applied in cases brought pursuant to MCL 500.3148(1) when a party seeks hourly attorney fees." *Id*. at 429. This conclusion is non-binding dictum because the dispositive issue in *Augustine*, 292 Mich App at 413, 428-429, was whether the trial court followed the panel's directive on remand to undertake an analysis under *Smith* in order to determine the reasonableness of attorney fees sought under MCL 500.3148(1). Given that this issue was dispositive, any analysis of whether the *Smith* analysis applied to a fee award under MCL 500.3148(1) is dictum, and, while it may be considered for its persuasive value, it is not binding on this Court. *Carr*, 259 Mich App at 383-384. Instead, we remain bound by *Univ Rehab Alliance.* Accordingly, plaintiff's contention that the analysis in *Smith* controls the outcome in this case and compels this Court to remand for the trial court to first determine a reasonable hourly rate and reasonable number of hours is without merit.

trial court was aware of the remaining factors set forth in *Wood* and MRPC 1.5(a) because the trial court recited the factors during different exchanges with plaintiff's counsel. Although the trial did not expressly make findings on every factor, it was not required to do so. See *Wood*, 413 Mich at 588. And, although the trial court did not comment on every factor, the record reveals that the trial court recognized the appropriate factors and was cognizant of the factors in reaching its decision. While a more extensive analysis on the record would certainly be helpful for purposes of appellate review, *Wood* does not require it, and based on the record evidence and the totality of the circumstances, we cannot conclude that trial court's ruling was outside the range of principled outcomes. See *Edge*, 299 Mich App at 127.

## III. ATTORNEY FEES FOR SERVICES PERFORMED ON BEHALF OF PLAINTIFF IN HER ROLE AS GUARDIAN AND CONSERVATOR

Attorney Darren Findling represented plaintiff in her role as guardian and conservator, but did not represent her in the no-fault action. Plaintiff sought to recover fees owed or paid to Findling as "allowable expenses" under MCL 500.3107(1)(a). On a partial motion for directed verdict, the trial court concluded, as a matter of law, that plaintiff could not recover such fees as allowable expenses under the no-fault act. "We review de novo the trial court's grant or denial of a directed verdict." *Aroma Wines & Equip v Columbia Distrib Servs, Inc*, 303 Mich App 441, 446; 844 NW2d 727 (2013). The trial court granted a directed verdict to defendant because it determined, as a matter of law, that attorney fees incurred by a guardian could not be recovered under MCL 500.3107. "This Court reviews de novo the proper interpretation of the no-fault act, MCL 500.3101 *et seq.*" *In re Carroll (On Remand)*, 300 Mich App 152, 159; 832 NW2d 276 (2013).

"A person injured in an automobile accident is entitled to a variety of personal protection insurance benefits—often referred to as PIP benefits—from his or her insurance carrier under MCL 500.3107." *Id.* (citation and quotation omitted). In order to be compensable, a claim for PIP benefits must fit within certain enumerated categories. *Douglas v Allstate Ins Co*, 492 Mich 241, 258; 821 NW2d 472 (2012); *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). "PIP benefits are payable for four general categories of expenses and losses: survivor's loss, allowable expenses, work loss, and replacement services." *Johnson*, 492 Mich at 173. See also MCL 500.3107; MCL 500.3108. Two categories are pertinent in this case: "allowable expenses," as set forth in MCL 500.3107(1)(a), and "replacement services" as provided in MCL 500.3107(1)(c).

Concerning "allowable expenses," MCL 500.3107(1)(a) provides, in pertinent part, that PIP benefits are payable for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." "That is, the Legislature required no-fault insurers to compensate injured persons for the expenses associated with 'products, services and accommodations' that were reasonably necessary for the 'injured person's care, recovery, or rehabilitation . . . .'" *In re Carroll (On Remand)*, 300 Mich App at 159-160, quoting MCL 500.3107(1)(a).

In *Douglas*, 492 Mich at 259, our Supreme Court explained that:

the plain language of [MCL 500.3107(1)(a)] imposes four requirements that a PIP claimant must prove before recovering benefits for allowable expenses: (1) the expense must be for an injured person's care, recovery, or rehabilitation, (2) the expense must be reasonably necessary, (3) the expense must be incurred, and (4) the charge must be reasonable.

Concerning the first requirement, i.e., that the expense is for an injured person's care, recovery, or rehabilitation, the terms "recovery" and "rehabilitation" are generally understood in accordance with their common meanings, but the term "care," has been the subject of several decisions from our Supreme Court. See, e.g., *Griffith*, 472 Mich at 532-536. In examining the term, "care," the Court concluded that "care" that is compensable under MCL 500.3107(1)(a) "must be related to the insured's injuries." *Id.* at 534. The Court also explained that the term "care" must have a meaning that is broader than the meaning of "recovery" and "rehabilitation," but not a meaning that is so broad as to render those terms nugatory:

> "Care" must have a meaning that is broader than "recovery" and "rehabilitation" but is not so broad as to render those terms nugatory. As noted above, both "recovery" and "rehabilitation" refer to an underlying injury; likewise, the statute as a whole applies only to an "injured person." It follows that the Legislature intended to limit the scope of the term "care" to expenses for those products, services, or accommodations whose provision is necessitated by the injury sustained in the motor vehicle accident. "Care" is broader than "recovery" and "rehabilitation" because it may encompass expenses for products, services, and accommodations that are necessary because of the accident but that may not restore a person to his preinjury state. [*Id.* at 535.]

As explained by this Court in *In re Carroll (On Remand)*, 300 Mich App at 164, under *Griffith*, "if the product, service, or accommodation would not have been necessary but for the injuries sustained in the accident, then it is compensable as an allowable expense for the injured person's care under MCL 500.3107(1)(a)." Further, as explained by this Court in *In re Carroll (On Remand)*:

> Notably, the Legislature provided that allowable expenses included expenses reasonably necessary for the care of the injured *person*; it did not limit this category to those expenses necessary to care for the injured person's *injury*. In its broadest sense, the phrase "for an injured person's care," as used in MCL 500.3107(1)(a), can refer to any product, service, or accommodation that one might use to provide for another's well-being. [*Id.* at 160.]

In addition to allowable expenses, the Legislature required no-fault insurers to cover "replacement services," which are defined as:

> Expenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he or she had not been injured, an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or herself or of his or her dependent. [MCL 500.3107(1)(c).]

Recently, our Supreme Court has clarified the difference between allowable expenses under MCL 500.3107(1)(a) and replacement services under MCL 500.3107(1)(c):

Services that were required both before and after the injury, but after the injury can no longer be provided by the injured person himself or herself *because* of the injury, are "replacement services," not "allowable expenses." They are services "in lieu of those that, if he or she had not been injured, an injured person would have performed . . . for the benefit of himself or herself . . . ." MCL 500.3107(1)(c). [*Johnson*, 492 Mich at 180.]

As the parties point out, we have decided similar issues to the one raised in the case at bar, but have not decided the precise issue raised in this case. In *In re Carroll (On Remand)*, 300 Mich App at 172, we explained that services provided by a guardian could comprise allowable expenses under MCL 500.3107(1)(a), provided that such services were reasonably necessary and that they did not otherwise constitute replacement services under MCL 500.3107(1)(c). In addition, in *In re Geror*, 286 Mich App 132, 136; 779 NW2d 316 (2009), we concluded that services performed by an attorney on behalf of an injured individual who has had a guardian appointed for him may be compensable as allowable expenses under MCL 500.3107(1)(a).

Although *In re Carroll (On Remand)* and *In re Geror* provide some guidance, they do not address the precise issue in this case, i.e., whether an attorney who represents a guardian can recover his or her fees incurred in that representation as an allowable expense under MCL 500.3107(1)(a). Thus, we turn to the plain language of MCL 500.3107(1)(a). The plain language of MCL 500.3107(1)(a) provides, in pertinent part, that allowable expenses consists of "*all reasonable charges* incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." (Emphasis added). The word "all," is used in reference to the reasonable charges that will be compensable, provided that the reasonable expenses are incurred for reasonably necessary products, services, and accommodations for a person's care, recover, or rehabilitation. "All" is typically defined to mean "1. the whole or full amount of . . . 2. the whole number of . . . 8. the whole quantity or amount . . . 10. everything . . . . *Random House Webster's College Dictionary* (2001). The use of the term "all" in regard to reasonable charges demonstrates the Legislature's intent to provide recovery for the full amount of charges, provided that the charges meet the requirements noted above for allowable expenses. Thus, although the statute places limitations on *what* may be considered allowable expenses, the plain language of the statute does not place restrictions on *who* may perform allowable expenses. Indeed, the statute contains no prohibitions on the individuals who may recover for services; it simply mandates that the services fall within the term "allowable expenses." Although the cases did not consider this same issue, both our Court and the Supreme Court have recognized as much. See *Douglas*, 492 Mich at 261 ("while the no-fault act specifies and limits what types of expenses are compensable, it places no limitation on *who* may perform what is otherwise an allowable expense."); *In re Carroll (On Remand)*, 300 Mich App at 169 (citation and quotation omitted) (recognizing "that the no-fault act does not limit who may perform what is otherwise an allowable expense under MCL 500.3107(1)(a).").

The plain language of MCL 500.3107(1)(a) compels the conclusion that the trial court erred when it determined, as a matter of law, that plaintiff could not be compensated for Findling's services rendered to plaintiff in her role as guardian and conservator. Indeed, MCL

500.3107(1)(a) makes no reference as to *who* performs services that result in reasonable charges incurred for reasonably necessary products, services, and accommodations for an injured person's care, recovery, or rehabilitation. Rather, it simply mandates that: "(1) the expense must be for an injured person's care, recovery, or rehabilitation, (2) the expense must be reasonably necessary, (3) the expense must be incurred, and (4) the charge must be reasonable." *Douglas*, 492 Mich at 259. Consequently, pursuant to the plain language of the statute, so long as the attorney's services on behalf of a guardian or conservator meet those four requirements, there is no statutory prohibition against an attorney recovering fees for representing a guardian or conservator under MCL 500.3107(1)(a).

In the case at bar, there is no dispute that Findling's fees were incurred. Thus, the issue becomes: (1) whether Findling's fees were for Feridon's care, recovery, or rehabilitation; (2) whether Findling's fees were reasonably necessary; and (3) whether Findling's fees were reasonable. These are normally questions of fact that we review for clear error. See *Douglas*, 492 Mich at 247, 265. Because the trial court precluded admission of Findling's billing records, which detailed the reasons the various fees were incurred in this matter, the record is void of any evidence for us to determine whether Findlings fees were necessary for Feridon's care, recovery, or rehabilitation, whether Findlings fees were reasonably necessary or reasonable, or whether they might otherwise constituted replacement services. Accordingly, we remand to the trial court with instructions to determine: (1) whether Findling's fees were for Feridon's care, recovery, or rehabilitation; (2) whether Findling's fees were reasonably necessary; and (3) whether Findling's fees were reasonable. In addition, consistent with our opinion in *In re Carroll (On Remand)*, 300 Mich App at 172-174, we note that the court should consider whether the fees for Findling's services fall within the category of "allowable expenses," "replacement services" or neither. Findling and plaintiff testified that some of Findling's fees were for managing the funds of the conservatorship. As set forth in *In re Carroll (On Remand)*, if such activities only pertain to ordinary management services that existed before Feridon was injured, such activities would be compensable under MCL 500.3107(1)(c) as replacement services, but they would not be allowable expenses under MCL 500.3107(1)(a). See *id.* If the fees were for replacement services, defendant's liability for such fees would be subject to the $20 per day limit set forth in MCL 500.3107(1)(c), and would be subject to the three-year limitation imposed under the statute. However, if Findling's fees were for services that went beyond what Feridon required before his injury, they could constitute allowable expenses under MCL 500.3107(1)(a). Further, if Findling's fees did not fall under either category, they would not be compensable.

In reaching this conclusion, we caution that our interpretation of MCL 500.3107(1)(a) does not conflict with attorney fee provisions found elsewhere in the no-fault act and that this interpretation does not provide another opportunity for the recovery of attorney fees in a no-fault action. MCL 500.3148(1) provides that an attorney is entitled to a reasonable attorney fee award "for advising and representing a claimant *in an action* for personal or property protection insurance benefits which are overdue" "if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment." (Emphasis added). Thus, pursuant to the plain language of MCL 500.3148(1), an award of attorney fees is only warranted for advising a client in *an action seeking PIP benefits* if PIP benefits are overdue and the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment. This should be distinguished from an attorney who represents a guardian/conservator and charges a fee for reasonably necessary products, services, and accommodations for an injured person's

care, recovery, or rehabilitation. Otherwise, MCL 500.3107(1)(a) could be read to allow attorney fees in a manner that conflicts with MCL 500.3148(1). When construing statutes, "[i]f statutes lend themselves to a construction that avoids conflict, that construction should control." *Walters v Leech*, 279 Mich App 707, 710; 761 NW2d 143 (2008). Accordingly, we do not read MCL 500.3107(1)(a) so as to allow the recovery of attorney fees in an *action* for PIP benefits. Rather, MCL 500.3107(1)(a) only permits recovery of attorney fees if the attorney fees were incurred "for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation[,]" where such services do not constitute an action for PIP benefits.

## IV. QUESTION 11 ON THE VERDICT FORM

Next, plaintiff argues that the jury should have been precluded from considering Question 11 on the verdict form, which read, "Will Plaintiff continue to incur allowable expenses in the future?" The jury answered this question in the negative. Plaintiff's counsel originally requested this question, stating, "I'd like a declaratory, you know, statement to the jury" concerning whether plaintiff was entitled to PIP benefits in the future for Feridon's attendant care. The following day, after attempting to draft a verdict form that was agreeable to both parties, plaintiff's counsel again raised the issue of his desire for the jury to decide whether plaintiff was entitled to future PIP benefits for Feridon's attendant care. This prompted the following exchange between plaintiff's counsel and the trial court:

> MR. SHULMAN: And then—the other issue is the declaration of whether he's—continues to require the need for the allowable services, we want a declaration that he will continue in the future to require these—these benefits—
>
> THE COURT: Okay.
>
> MR. SHULMAN: —and I think it should be a real [sic] simple question, just [sic] does, ["]will plaintiff continue into the future to require the allowable expenses enumerated above.["]

Following a short recess, the parties submitted a verdict form to the trial court and indicated on the record that they both agreed to the form as written. The form contained Question 11, the question to which plaintiff now objects.

"It is settled that error requiring reversal may only be predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence." *Lewis v LeGrow*, 258 Mich App 175, 210; 670 NW2d 675 (2003). Here, because plaintiff expressly requested that Question 11 be submitted to the jury and subsequently failed to object to the verdict form as written, she waived appellate review of this issue. *Bonkowski v Allstate Ins Co*, 281 Mich App 154, 168; 761 NW2d 784 (2008) ("A party may not waive objection to an issue and then argue on appeal that the resultant action was error."). Indeed, to conclude otherwise would be to allow plaintiff to harbor the error, if any, as an appellate parachute. *Marshall Lasser, PC v George*, 252 Mich App 104, 109; 651 NW2d 158 (2002). Thus, we find this issue to be waived. *Id.* Moreover, even if we considered the matter, we

would find plaintiff's claims to be meritless. *Rose v State Farm Mut Auto Ins Co*, 274 Mich App 291, 295; 732 NW2d 160 (2006).

Affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Joel P. Hoekstra